## Miller & Co. *v.* Boykin.

*Action on Promissory Note, by Assignee against Maker.*

1. *Transfer of note as collateral security; rights of holder, and defenses against.*—Whatever may be the general weight of authority elsewhere, it is the settled law of this State, that one who takes negotiable paper as collateral security for a pre-existing debt is not a purchaser for value in the usual course of trade, but the paper is open in his hands to all defenses which might have been made against it in the hands of the assignor or original owner; and this principle applies to accommodation paper. But, where one honestly takes negotiable paper, before maturity, as collateral security for a debt contemporaneously contracted, or in pursuance of an agreement made at the time the debt was contracted, he is entitled to protection against equities or defects of which he had no notice.

2. *Same.*—To constitute a purchaser for value, of notes or paper agreed to be transferred as collateral security for a debt contemporaneously contracted, it is not necessary that the securities to be transferred should be particularly described at the time; an agreement to give collaterals would be sufficient to include any particular collateral afterwards delivered in execution of such promise; the delivery, when made, would relate back to the time of the agreement, and it would be immaterial to the validity of the agreement or transfer, whether the collateral afterwards transferred was, at the time the agreement was made, in the city where the parties then were, or elsewhere.

3. *Relevancy of evidence as to time and place of mailing letter.*—It being a material question, at what time a letter, sent through the mails from a country post-office in Dallas county, *via* Selma to Mobile, was received in the latter city, the postmaster in Selma can not be allowed to testify, "that country postmasters sometimes brought letters, left in their offices for mailing, in person, and mailed them in Selma;" nor that, "at times, when there was a wash-out, or other interruption in the mails, it was not an unusual thing for them to do so;" there being no evidence that the particular letter was so brought and mailed at Selma, such evidence is irrelevant.

4. *Same.*—The writer of the letter testifying that he mailed it at his country post-office, whence the due course of mails was *via* Selma to Mobile, and had no recollection of having ever written to his correspondent at Mobile by boat, though "he may have done so;" evidence as to the course of the mails by steamboat on the Alabama river, between Portland and Mobile, is too remote from the issue, and is properly excluded.

5. *Refreshing memory of witness by memorandum.*—A witness can not refresh his memory by referring to a written memorandum, nor testify to the contents of the memorandum as facts, when he did not himself make

[Miller & Co. v. Boykin.]

the memorandum, and had at no time any personal knowledge of the truth of the facts therein recited.

6. *Official records and documents.*—A post-master being required by law, and by the regulations of the general post-office department, to keep a registry of the arrival and departure of the mails, and to certify its correctness to the department at stated times; such official registry is admissible, generally, to prove any relevant fact therein recited, which may arise collaterally on the trial of a cause, not constituting one of the issues to be tried; and it is immaterial whether the facts, as therein stated, are known to the officer having charge of the record, or are based on reports made by others in the discharge of their official duties.

7. *Same.*—In such case, the officer can not be permitted to read from memoranda taken from the official record, but must produce the original record, or a sworn or certified copy; and the better practice is to require a sworn copy, in the absence of the original.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by Thomas P. Miller & Co., bankers in Mobile, suing as partners, against Starke H. Boykin; was commenced on the 16th October, 1880, and was founded on the defendant's promissory note for $2,500, dated Mobile, March 10th, 1880, and payable at the Bank of Mobile, on the 26th June after date, to the order of B. O. James & Co., by whom it was transferred to the plaintiffs.

The defendant filed eight special pleas, to all of which demurrers were sustained, except the 5th, 6th, and 8th, which are as follows: 5. "That he is an accomodation maker of said note, and that it was not indorsed to plaintiffs for a valuable consideration." 6. "That he is an accommodation maker of said note, and that said note was indorsed to plaintiffs as collateral security for a pre-existing debt, and that no valuable consideration moved from plaintiffs to said B. O. James & Co. at the time of the indorsement of said note." 8. "That he executed and delivered said note to said B. O. James & Co., for their accommodation, and without any consideration."

The plaintiffs replied to the 5th plea, "that they acquired and became the holders of said note in good faith, and by a transfer to them by said B. O. James & Co., before maturity, in the usual course of trade, and founded on a valuable consideration then paid; and they deny that said note was not indorsed to them for a valuable consideration." Issue was taken on this replication. The plaintiffs demurred to the 6th plea, assigning the following causes of demurrer: 1st, "that while it may be true that no consideration moved from plaintiffs to said B. O. James & Co., at the time of the indorsement of said note, yet a consideration may have moved from plaintiffs to said B. O. James & Co., before maturity of said note, and said plea is no bar to plaintiffs' right to recover;" 2d, "that said plea does not show but that time was given said B. O. James & Co. on a

pre-existing debt, and does not show but that there was a release of other securities by plaintiffs to said B. O. James & Co." This demurrer being overruled, issue was taken on the 6th plea. To the 8th plea the plaintiffs replied, " that they acquired and became the holders of said note in good faith, by a transfer of the same to them by said B. O. James & Co., before maturity, in the usual course of trade, and founded on a valuable consideration then paid." Issue was joined on this replication.

On the trial, as appears from the bill of exceptions, after the plaintiffs had read in evidence the note sued on, the defendant read in evidence an admission as to what B. O. James, an absent witness, would testify if present: that the note "was signed by the defendant for the accommodation of B. O. James & Co., and was without any consideration whatever; that said note was prepared in Mobile, on the 10th day of March, 1880, dated that day, and forwarded by mail to the defendant on that day, with a letter requesting him to sign the same for the accommodation of B. O. James & Co.; that he obtained from plaintiffs, for B. O. James & Co., on the 16th March, 1880, a loan of $2,500; that he obtained said loan solely on the due-bill of B. O. James & Co., and did not give any collateral security for it at the time he obtained said loan; that he did not, at the time he obtained said loan, indorse or deliver said note to plaintiffs, and did not then have it in his possession; that he had not then received said note from the defendant, and did not receive it until a day or two after he had obtained said loan; that when he obtained said loan from plaintiffs, he did not mention said note, and made no promise to deliver it to them as collateral security for said loan, or for any other purpose; that he did, about ten days after he had obtained said loan, leave said note with plaintiffs, as collateral security for said loan; that when he indorsed and delivered said note to them, neither he nor said B. O. James & Co. received any consideration for said indorsement and delivery, but the same was without any present valuable consideration, and was as collateral security for a pre-existing debt."

The defendant himself then testified, as a witness in his own behalf, that he received the note, on the 12th March, 1880, in a letter from B. O. James & Co. at Mobile, dated the 10th March, and addressed to him at "Tilden, Dallas county, Alabama;" and that he signed the note, "and returned it to B. O. James & Co. by the next mail leaving Tilden P. O. after the note was received." Both of these letters were produced, and identified by the witness. The defendant's letter, in which he returned the note to B. O. James & Co., was dated March 14th, and he testified that he mailed it at Tilden P. O., directed to B. O. James & Co. at

[Miller & Co. v. Boykin.]

Mobile, "by the first mail after it was written, and put it in the post-office ready for the mail that left Tilden on Monday, March 15th, about two o'clock in the evening; that the mail left Tilden, about that hour, on Monday, Wednesday, and Friday; that the usual course of the mail was, to leave Tilden at two o'clock P. M., on Monday, thence to Minter Station on the Selma and Gulf railroad, eleven miles distant, where it laid over all night, thence on Tuesday, March 16th, in the morning, for Selma, and thence to Mobile, where it would arrive, by the usual course of the mail, on the 17th March; that he received the letter of B. O. James & Co., inclosing the note, on Friday night, the 12th March, and put his letter in reply, with the note, in the mail, between Friday night, March 12th, and Monday, March 15th, 1880; that mails arrived at Tilden, from Minter Station, by horseback, on Monday, Wednesday, and Friday, and returned the same day in the evening." On cross-examination, said witness stated, in substance, that he had other transactions with B. O. James & Co., who were cotton factors in Mobile, while he was a merchant at Tilden; that he sometimes shipped cotton to them, and they sometimes bought goods for him; that he had obtained advances from them in the early part of the year 1880, and had given his note for $2,500 for such advances; that he signed another note of $2,500 for their accommodation, and inclosed it to them in the same letter with the note sued on; that he lived seven miles from Portland, which is on the Alabama river, and occasionally went there to look after freight; that there were three boats on the Alabama river, between Portland and Mobile, in March, 1880; that he communicated with B. O. James & Co. "almost invariably by mail, and don't recollect writing them by boat at any time, though may have done so."

F. Boykin, a witness for the defendant, who resided near Tilden in March, 1880, testified, "that the mails left there on Monday, Wednesday, and Friday, about two, or half-past two P. M., and arrived on nights of same days from Selma; that the mail-rider met the train at Minter Station, going south from Selma, about five o'clock P. M., and brought back the mail to Tilden; that there was no other mail from Tilden but that one; that there was a mail on the river at that time; that three boats were then running, one of which went to Mobile on Wednesday, or Wednesday night, and one on Saturday, or Saturday night; that there was no mail connection between Tilden and Portland; that letters mailed at Tilden never went by boat; and that letters leaving Tilden on Monday lay over at Minter Station until Tuesday morning, then went to Selma, and reached Mobile, by the usual mail-route, on Wednesday. The defendant introduced H. Cochran as a witness, who was

the post-master at Selma in March, 1880, and who testified, "that a letter leaving Minter Station on Tuesday morning, March 16th, 1880, by due course of mail arrived at Selma at 8:50 A. M. that day; that it would then leave Selma, by way of Meridian, on 11 A. M. train, arriving in Mobile at 2 A. M., Wednesday; that the mail came in on Selma and Gulf railroad, on Tuesday, March 16th, 1880, at 2 P. M., '*as I find by referring to written memorandum of arrival of mails.*' Witness testified, on examination by plaintiffs' attorney, that he had no knowledge of the time outside of the memorandum stated on the paper which he held in his hand, and could not say that he had any recollection of the time independent of the memorandum; that he did not himself make the memorandum of time of arrival of mails, but it was made by route agents; that he was not always in the office when mails arrived, and was not always present when route agents made memoranda of arrivals. On this state of facts, the plaintiffs objected to the testimony of this witness, as to the time of the arrival of mails on the 16th March," and the court sustained the objection; but, "in order to ascertain what, if any thing, was competent to go to the jury, at this juncture, the court examined the witness, of its own motion," and the witness stated: "I know the memorandum, in reference to the arrival of train being late, was true in fact at the time the memorandum was made. Outside of the memorandum, I have no recollection of the arrival of the train on the 16th March; but I know, when a train was entered on the schedule as being late, it was late on the particular day; and I ascertained that fact from inquiry, and that the fact was true, before I certified to schedule. I know, and can state from this, that on the 16th March, 1880, the train from Minter arrived at 2:10 P. M., as shown by the schedule shown me.' The witness had previously stated, in this connection, that the record which was shown him, and which he held in his hand, was a record of the arrival and departure of mails at Selma, required by law to be kept by the postmaster; that whenever the mail agent arrives, or departs, with his mail, he enters the hour of the day, and signs his name; that it is the duty of the postmaster to see that these entries are correct, as he has to certify them to the department; and that he never certified to the failure of the arrival of a mail in time, on account of a break in the railroad over which it came, without having investigated and ascertained the fact to be true. '*I signed this record, or schedule,*' he said, '*at the time it purports to have been signed, and then certified to its correctness.*' On this state of facts, against the objections of the plaintiffs, the court allowed the witness to read to the jury, as a part of his evidence, the time of the arrival of the mail from Minter on the 16th of March, 1880, as shown by said

record—namely, that it arrived at 2:10 P. M., delayed on account of a break in the railroad;" to which the plaintiffs duly excepted.

Said Cochran further testified, "that a letter coming to Selma on that day," March 16th, 1880, "over the Selma and Gulf railroad, would leave Selma on Wednesday, at 1:30 A. M., reaching Mobile, by due course of mail, at 2 P. M. on the 18th March; that if there had been no delay of the mail on the 16th March, over said railroad, it would have reached Mobile on the 17th March, at 2 A. M. He also testified, on cross-examination, that he knew there was a mail-route on the Alabama river in March, 1880, and that mails were carried on the river between Portland and Mobile; that if a boat left Portland on Saturday evening, March 15th, 1880, it ought to have reached Mobile by Monday, or in about thirty-six hours." The court sustained an objection to this evidence, and excluded it; to which an exception was reserved by the plaintiffs. "Plaintiffs then asked said witness this question, '*Is it not a fact, that country postmasters sometime brought letters, left in their offices for mailing, in person, and mailed them in Selma.*'" The court sustained an objection to this question, and would not allow the witness to answer it; to which ruling the plaintiffs excepted. "Said witness then testified, that the distance from Tilden to Selma was some twenty miles, or about that, though he did not know the exact distance. Plaintiffs then offered to prove by said witness, *that at times, when there was a wash-out, or other interruptions in the mails, it was not an unusual thing for country postmasters to bring letters, mailed at their offices, in person, and mail them in Selma.*" The court sustained an objection to this evidence as proposed, and plaintiffs excepted.

On the part of the plaintiffs, the depositions of Thomas P. Miller, John W. Miller, and R. D. Williams, the three partners composing their firm, were read in evidence; each of whom testified positively, in substance, that the note sued on was transferred and delivered to them by B. O. James, indorsed in blank, on the 16th March, 1880, as collateral security for a loan of $2,500 made by them to B. O. James & Co. on that day; that the note was attached to the due-bill of B. O. James & Co. at the time it was taken, and the amount of the loan to them was then placed to their credit, and checked out on the next day; that B. O. James & Co. were not then indebted to plaintiffs on any former transactions, but had a balance of over $600 to their credit; that another note for $2,500, executed by one Bryant, was at the same time transferred and delivered to them as collateral security for the same loan, and as part of the same transaction. Thos. P. Miller also testified as follows in reference to the transaction: "This transaction was an entirely

new loan, made and consummated the 16th March, 1880, for $2,500; B. O. James & Co. giving their due-bill for $2,500, dated that day, secured by two notes," describing them, " on neither of which have we ever received anything, and the whole amount of said loan is still due by B. O. James & Co. I negotiated the loan directly with B. O. James. It was understood that they were to give ample and good security for the loan."

On all the evidence adduced, which the bill of exceptions purports to set out, and the substance of which is above stated, the plaintiffs requested several charges in writing, of which the court refused the following :

" 3. If the jury believe, from the evidence, that B. O. James & Co. arranged a loan with Thos. P. Miller & Co. for $2,500, on or about the 16th March, 1880, and gave them their demand due-bill for $2,500 on said last-named day; and that it was agreed by plaintiffs and said B. O. James & Co., before said loan, that said B. O. James & Co. were to give plaintiffs collateral security for said loan ; and that it was agreed or understood by said parties that the S. H. Boykin note sued on was to form a part of said security ; and that plaintiffs loaned B. O. James & Co. $2,500, on the 16th March, 1880, in pursuance of said agreement ; and that the amount of said loan was placed to the credit of said B. O. James & Co., on their deposit account with plaintiffs, on said last-named day; and that said note of S. H. Boykin was delivered to plaintiffs by said B. O. James & Co., as collateral security to said loan, either on the 16th day of March, or within a few days thereafter, but before the Boykin note became due, in pursuance of an agreement that it was to form a part of plaintiffs' security for said loan,—then they must find for the plaintiffs."

" 4. If the jury believed, from the evidence, that on or about the 16th March, 1880, B. O. James & Co., acting by B. O. James, applied to plaintiffs, in Mobile, for a loan of $2,500; and that said B. O. James & Co., on or about that day, delivered to plaintiffs their due-bill for $2,500, for the amount of said loan, and at that time agreed to transfer to plaintiffs, as collateral security to said loan, the note of defendant here sued on, together with another note of W. M. Bryant for $2,500, falling due about the same time; and that said note sued on was delivered by defendant to B. O. James & Co. for their accommodation ; and that the same was transferred to plaintiffs on or about the day of said loan, and before the maturity of said Boykin note, and in pursuance of a previous agreement to so transfer the same to plaintiffs, as collateral security to said loan ; and that said due-bill is unpaid, and said B. O. James & Co. still owe plaintiffs the same; and that said loan of $2,500 was placed to the credit of B. O. James & Co. on the banking

[Miller & Co. v. Boykin.]

books of plaintiffs; and that said B. O. James & Co. kept a
deposit account with plaintiffs as bankers; and that at the time
the said loan was so arranged, if they find that there was such
a loan and arrangement made, B. O. James & Co. owed plaintiffs
nothing; then plaintiffs are *bona fide* holders of said note for
a valuable consideration, and are entitled to protection against
all equities or defenses to which the paper may have been sub-
ject as between the original parties, that is, between B. O.
James & Co. and the defendant, and they must find for the
plaintiffs."

The plaintiffs duly excepted to the refusal of these charges,
and also to the following charges, which were given on request
of the defendant: 1. "If the jury believe, from the evidence,
that the note sued on was not in Mobile on the 16th March,
1880, and was not transferred and delivered to plaintiffs at the
time of the loan, they must find for the defendant." 2. "The
jury can not find that there was any agreement between James
and the plaintiffs that this note was to be delivered after the
loan, unless there is some testimony in the case to that effect."

The several adverse rulings of the court on the pleadings
and evidence, and in the charges given and refused, to which
exceptions were reserved, as above stated, are now assigned as
error.

W. R. NELSON, for appellants, cited *Fenly v. Pritchard*,
2 Sandf. N. Y. 151; *Smith v. Mullock*, 1 Abb. Pr. (N. S.) 375.

SATTERFIELD & YOUNG, *contra*.

SOMERVILLE, J.—It is the settled law of this State,
whatever may be the general weight of authority on the ques-
tion, that one who takes negotiable paper as *collateral security*
for the payment of a pre-existing or antecedent debt, is not a
purchaser for value in the usual course of trade; and the rule
is held to apply to accommodation paper, as well as to other
negotiable securities.—*Fenouille v. Hamilton*, 35 Ala. 319;
*McKenzie v. Branch Bank*, 28 Ala. 606.

In all such cases, the paper is, of course, open in the hands
of the assignee to all the defenses which could have been made
against it while in the hands of the assignor or original owner.
1 Parsons on Bills, 219.

But, where one honestly receives a negotiable bill or note
before maturity, as collateral security for a debt contracted
simultaneously, or *in pursuance of a previous agreement* made
at the time the debt was contracted, it is quite well settled, that
he is entitled to protection against secret equities or defects of
which he had no notice.—1 Parsons' Bills and Notes, 219;

[Miller & Co. v. Boykin.]

*Coleman v. Smith,* 55 Ala. 368; *Watts v. Burnett,* 56 Ala. 340.

These are the leading principles of law affecting the rulings of the court below on the trial of this cause.

Charges numbered *three* and *four*, which were requested by the appellants, contained a correct exposition of these principles. They were properly refused, however, because there was no evidence before the jury showing, or tending to show, that the note sued on was transferred as collateral security to plaintiffs, pursuant to any previous agreement having particular reference to this instrument specifically, or *eo nomine.* This is assumed in the charges, and they, therefore, tended to mislead the jury. It is true that the plaintiff, Miller, testified, that "it was understood that B. O. James & Co." [the assignors of the note in question] "were to give ample and good security for the loan of $2,500." And if this agreement was made simultaneously with the negotiation for the loan made by the bank, the jury might construe it to be broad enough to include the note of Boykin, which was so transferred either then or afterwards. In order to constitute a transferree, under such circumstances, a purchaser for value in due course of trade, we see no reason why the particular securities, if any are agreed to be transferred, should be *described* at the time. We apprehend that an agreement to give collaterals, would be sufficient to include any particular collateral, which was afterwards delivered in execution of the antecedent promise.—*Fenly v. Pritchard,* 2 Sandf. (N. Y.) 151. The charges under consideration, however, were not framed to cover this aspect of the case.

The first charge given by the court at the request of the defendant was erroneous, because it entirely withdrew from the jury the consideration of Miller's testimony, alleging an understanding generally that James & Co. were to give collateral security for their loan. If such agreement was made at the time of the loan, and the note in suit was subsequently delivered in pursuance of it, it was immaterial whether the note was in Mobile, or elsewhere, at this date.

The second charge given at defendant's request, no doubt, stated a correct proposition of law, but was liable to mislead, by inducing the jury to entirely discard the consideration of Miller's statement, to which allusion is above made.

The question put to the witness Cochran was irrelevant, and was properly excluded. The fact that "country postmasters *sometimes* brought letters, left in their offices for mailing, in person, and mailed them in Selma," would afford no just ground for a jury to infer that the letter of Boykin was thus mailed at Selma, by the postmaster at Tilden. So, of the other question to the same witness, seeking to elicit a similar answer.

It was clearly not permissible for the witness Cochran to

[Miller & Co. v. Boykin.]

refresh his memory, and testify in this manner as to the contents of the *memorandum*, which purported to be a statement of the arrival of mails at the Selma post-office. In order that a witness may thus refresh his recollection, or prove the contents of a memorandum, where they were once known to be true, and are forgotten, it is indispensable that the witness himself should, at some time previous, have had a *personal knowledge* of the truth of the facts sought to be proved. It is not shown that this witness had any such knowledge of the arrivals of the mail, but it appears, on the contrary, that he had learned the fact only by inquiry from others.—*Acklen v. Hickman*, 63 Ala. 424; *Mims v. Sturdevant*, 36 Ala. 636; 1 Greenl. Ev. §§ 437–8.

The evidence showed, however, that the postmaster kept a registry of the arrivals and departures of mails, under authority and by direction of the Post-office Department of the general government; that this was made his official duty, and he was required to see that it was correct, and to certify such fact to the Department at stated times. Public records of this nature, kept by duly qualified public officers, within the range or scope of their duties, and kept in conformity to law, are admissible in evidence, generally, in proof of any relevant fact recited in them, when such fact arises collaterally in the trial of a cause, and does not constitute one of the issues in dispute, as presented by the pleadings. And this is true, whether these facts are known to the officer in custody of the record, or are based on the reports of other persons in the discharge of their official duties as subordinates.—1 Whart. Ev. §§ 640, 653, 656, 61. The courts have construed to come within this principle, and have accordingly admitted in evidence, books of the custom-house, prison registers, a record of registered letters in a post-office, parochial registries of marriages and baptisms, poll-books, and other records or registries of like character.—1 Greenl. Ev. §§ 483–4; 1 Whart. Ev. §§ 640, 647, 651.

But, in order to bring a case within this principle, either the *original* record must be produced, or such a *copy* as is authorized under the established rules of evidence. In the case of records of a court, an exemplified copy under seal is allowed, or else any other properly authenticated copy. In records of this nature, the rule is well settled, that an *examined* or *sworn* copy ought to be introduced, and, according to the weight of authority, probably, a *certified* copy may be. The better practice, however, is to require a sworn copy, in the absence of *the original*, which is, of course, always admissible.—1 Whart. Ev. § 114; 1 Greenl. Ev. § 485. It is clear, from these principles, that the post-master could not be permitted to read from mere memoranda taken from the post-office registry, thus giving pa-

[Ashford v. Patton.]

rol evidence of facts of which he had no personal knowledge, and we understand the court to have so held.—*Crawford v. Branch Bank*, 8 Ala. 79. If, however, the bill of exceptions is to be construed as stating that the *original record*, or post-office registry, was offered in evidence, the ruling of the court was free from error in admitting the evidence.

The testimony of Cochran, as to the course of the mails on the Alabama river, from Portland by steamboat to Mobile, was properly excluded. There was no evidence whatever tending to show that the letter written by Boykin to James & Co. could have gone by this route. The letter is proved to have been mailed at Tilden, whence the due course of mails was to Minter Station, thence to Mobile *via* Selma. Boykin disclaims any recollection of having written these parties by boat at any time, but admits, on cross-examination, that he "may have done so." This admission has no reference to the letter in question; and the possibility of mistaken recollection, to be deduced from it, is too remote and speculative, in our judgment, to render it relevant for the purpose contended.

The demurrer to the sixth plea was properly overruled. If the Boykin note was received as collateral, pursuant to a previous agreement to give good security, the delivery would relate back, in legal contemplation, to the time of the agreement when the plaintiffs negotiated the loan, provided (as there is proof tending to show) that such negotiation and agreement were simultaneous. The plea, as framed, was, therefore, broad enough to include both aspects of the case presented by the demurrer.

The judgment of the City Court must be reversed, and the cause remanded.