# Boykin *v.* Bank of Mobile.

*Action on Promissory Note, by Indorsee against Maker.*

1. *Construction of writings; questions for court and jury.*—It is the province of the court to construe written instruments, and to declare their legal effect; although, when the legal operation and effect of the instrument depends, not only on the meaning and construction of the words used, but also upon collateral facts and extrinsic evidence, the inference of fact to be drawn from the evidence should be submitted to the jury: yet, if the evidence is addressed to the court, without objection, and passed on, the court may draw all such inferences as the jury could properly have drawn.

2. *Ambiguity in contracts; rules of construction.*—The law leans against the destruction of contracts on the ground of uncertainty, and a contract will not·be declared void on that ground, unless, after reading and interpreting it in the light of the circumstances under which it was made,

and supplying or rejecting words necessary to carry into effect the reasonable intention of the parties, their intention can not be fairly collected and effectuated.

3. *Promissory note; time of payment omitted or uncertain; parol evidence in aid of.*—A promissory note ought, regularly, to express on its face the time at which it is payable; and if no time is expressed, or plainly manifested, and a blank is not left for the insertion of a day of payment at the option of the payee, resort may be had to extrinsic evidence, showing the circumstances under which the note was executed, and the design of the parties in executing it, in order to explain an evident omission, and to fix the time at which it was intended to make the note payable.

4. *Same.*—A promissory note payable "*seventy-five after date,*" negotiable and payable in bank, and proved to have been made for the accommodation of the payees, who were commission-merchants in Mobile, to aid them in their business, and delivered to them by the maker, construed to be payable seventy-five *days* after date; and parol evidence was held admissible, in aid of the evident omission, showing the character of negotiable paper, as to length of time of maturity, which the banks in the city would accept.

5. *Transfer of negotiable note as collateral security; rights of holder, and defenses by maker.*—A creditor, receiving negotiable paper as collateral security for the payment of a pre-existing debt, is not regarded as having acquired it for valuable consideration in the usual course of trade, and is not entitled to protection against equities and defenses on the part of the maker of which he had no notice; and under the decisions of this court, contrary to the weight of authority, accommodation paper is not an exception to this rule.

6. *Same.*—To constitute a purchaser for value, of notes or paper agreed to be transferred as collateral security for a debt contemporaneously contracted, it is not necessary that the notes or paper should be particularly described at the time: when the securities are subsequently transferred, in execution of the agreement, it is rendered specific and certain, and the creditor becomes a holder for value.

7. *Relevancy of evidence as to terms of agreement for transfer of note as collateral security.*—In an action against the maker of a negotiable promissory note, proved to have been given for the accommodation of the payees, and by them transferred to the plaintiff bank as collateral security for a loan; the defense being want of consideration, and the terms of the agreement for the transfer being controverted—whether it was subsequent to the loan, or was made under an agreement contemporaneous with the loan; the fact that no portion of the money loaned was drawn out of the bank until after the transfer of the note, is relevant and competent evidence for the plaintiff.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by the Bank of Mobile, a domestic corporation, against Starke H. Boykin; and was founded on a promissory note signed by said Boykin as maker, and in these words:

"MOBILE, ALA., January 27th, 1880.

"*Twenty-five after date*, I promise to pay to the order of B. O. James & Co. twenty-five hundred dollars, value received, negotiable and payable at the Southern Bank of Alabama."

This instrument was indorsed in blank by the payees, and the plaintiff sued as their indorsee; the complaint describing

the instrument as a promissory note payable seventy-five *days* after date, and alleging that it was transferred to plaintiff, for value, before maturity, and was still due and unpaid. The defendant pleaded the general issue, and several special pleas, which alleged, in substance, that he signed the note for the accommodation of the payees, and that it was transferred and delivered by them to the plaintiff, as collateral security for a pre-existing debt, and without any other consideration. Issue was joined on these pleas, and a trial by jury was had on the demand of the defendant. A bill of exceptions was reserved by the defendant, to the rulings of the court on the trial, in which the facts are thus stated:

"R. F. Manly, a witness for plaintiff, testified as follows: 'I was cashier of the Bank of Mobile in March, 1880, and am now, and have been since January, 1875. I know B. O. James & Co., who did business in Mobile, in March, 1880, as cotton-factors and commission-merchants. They opened an account with the Bank of Mobile, on March 15th, 1880, when Mr. James came into the bank, and stated that he would like to do business with us, as the bank with which he had been doing business was going out of business, and that he would like to make a temporary loan, and would give his due-bill and security. I was also acting that day as teller. He then gave me a demand note, promising to pay $5,000, with interest, on demand, and two notes,—the one now sued on and another. He gave me, also, at the time, a slip containing names as references as to the solvency of the makers of the said notes. I took the note of said B. O. James & Co., and entered the $5,000 to their credit on their bank-book. Later during the day, I made inquiries regarding the solvency of the parties, and was advised that they were good for the notes they had signed. He gave me, with said demand note, two pieces of paper—first, a note signed by S. H. Boykin, dated January 27th, 1880 (the note sued on), and another note. I am not certain whether I gave him the bank-book instantly, or after I made the inquiries. The bank took Boykin's said note, and another, for $2,500 each. I placed the $5,000 to the credit of said B. O. James & Co., and they checked it out a few days afterwards. The Boykin note was given at the time said James proposed to borrow the $5,000, or a few minutes afterwards. I did not notice the precise reading of the note. We were not at that time taking paper payable in the fall. The Southern Bank of Alabama is in Mobile. I had been doing a banking business, in its various phases, for many years.' Plaintiff's counsel then asked said witness to answer this question, which was for the court: 'Are you acquainted with the usual course of trade in reference to time paper, and the length of time usually given

[Boykin v. Bank of Mobile.]

on notes taken for the loan of money by the banks of Mobile, in March, 1880'? The witness answered: 'I am acquainted with the usual time for which paper was given, for security for loans, at that time.' To this question and answer, each, the defendant objected; and he excepted to the overruling of his objections. The witness further answered: 'Just at that time, the banks were not commonly taking fall paper, but were usually taking paper which fell due in two or three months. No paper was taken for seventy-five weeks, months, or years.' The defendant moved to exclude this answer, on the ground that it was irrelevant; and he excepted to the overruling of his objection. The court received the foregoing answers to said question, as tending to show the situation of the parties, and the circumstances surrounding them at the time."

The plaintiff then offered in evidence the note on which the action was founded, above copied; and the defendant objected to its admission, on these grounds: "1st, because said instrument is not the note described in the complaint; 2d, because there is a variance between said instrument and the note described in the complaint; 3d, because said instrument is irrelevant." The court overruled these objections, and allowed the instrument to be read in evidence to the jury; and the defendant excepted. The witness Manly, further testifying, stated: "The Boykin note, here sued on, was taken, and pinned to the demand note of B. O. James & Co. On the 29th March, 1880, I made demand in writing of B. O. James & Co., for the payment of the loan; but it was not paid, and has not since been paid. When said Boykin note was offered, I had no notice that it was accommodation paper. Mr. James stated, that the paper was good—that the maker was a party he knew to be good; and he gave me references to others, to confirm his statement. It was on the faith of this and the other note that we placed the $5,000 to the credit of B. O. James & Co. They checked it out in a few days. I paid the checks." Said witness testified also, on cross-examination: "The usual custom of farmers', or country merchants' paper, was of two kinds: one was paper expected to be paid out of the present crop, and the other out of the next crop; one was long, and the other was short paper. I have seen a good deal of it fall due in April. That would be payable out of the crop of the preceding year. A great majority of such paper does not mature at that time. There is a great deal of such paper maturing in October, November, and December, but a respectable amount in March, April, and May." Said witness, on re-examination by plaintiff, further said: "The usual period of paper by country merchants or farmers, making paper in January, does not run into the next season. The majority of it, that I have seen, matures before the summer months."

[Boykin v. Bank of Mobile.]

B. O. James, a witness for defendant, thus testified : "I did not give the defendant any consideration for the note read in evidence in this case. It was given for the accommodation of B. O. James & Co., of which firm I was then a member, and was the business man of the firm. Defendant did not owe B. O. James & Co. anything. A short time before our failure, I commenced doing business with the Bank of Mobile, the Southern Bank of Alabama (with which I had done business) having retired. I went to see Mr. Manly, and told him I would like to open business with him. I opened an account with the Bank of Mobile for $5,000, by borrowing that sum from the bank. I gave my due-bill, or demand note, for the sum borrowed, and went out with the bank-book and a bundle of checks. During the day I handed Mr. Manly collaterals to secure the amount of the due-bill previously passed to my credit, and gave him references as to the standing of the parties. One of the notes he accepted was this of Boykin's. I handed him other notes, and he selected two, one being the note read in evidence. It was about eleven o'clock when I got the bank-book and checks, and I gave him the notes before the close of banking hours—before two o'clock P. M. Mr. Manly said, at the time, that it was the custom, or regulation, to have collaterals. I told him I would give some that I thought would be satisfactory. No particular collaterals were mentioned." [On cross-examination :] "I proposed, at the time of the loan, that I would give collaterals. I gave none to Mr. Manly at that time, but told him I would give him collaterals which I regarded as good. I don't know what collaterals I had with me at the time. I brought in the collaterals before the close of banking hours. The defendant was doing business with B. O. James & Co., so far as cotton was concerned. I wanted his accommodation paper to borrow money on. I wanted it to have it convenient for use if I was crowded. He was a farmer and a country merchant. He gave drafts on me to pay parties he owed in Mobile. I wrote the paper sued on. I asked him for the paper. I don't remember what was said as to the time I wanted the paper to run. I don't remember what occurred, except from the face of the paper. I don't remember anything, except that the paper exists. I gave Manly references at the time I gave him the notes. I don't remember to whom I referred him for Boykin's note. I don't remember whether I read the note of Mr. Boykin. He owed me nothing at the time the note was executed." The witness Manly, then being re-called by plaintiff, said : "The paper was in the possession of the bank before any money was paid out." The defendant moved to exclude this statement from the jury, "on the ground that it was irrelevant," and excepted to the overruling of his

objection. " The court instructed the jury, that this evidence was admitted as tending to show the contract between plaintiff and said James & Co.—whether they could draw or not before the collateral was taken."

" This was all the evidence in the case. Then the defendant, in connection with the testimony of James that Boykin was a farmer and a country merchant, and in connection with the testimony of Manly on cross-examination, moved the court to exclude what Manly said about the custom of banks in Mobile, 1st, because said testimony was irrelevant; 2d, because the custom was not brought home to the defendant; 3d, because no custom was established by the testimony; and, 4th, because the custom sought to be proved could not vary the terms of the written instrument. The court overruled the motion, and the defendant excepted.

" The court instructed the jury, in its general charge, as follows: 'If the jury believe, from the evidence, that on the day of the loan, and at the time the bank entered the credit on the pass-book of B. O. James & Co., there was an understanding between the bank (Mr. Manly) and Mr. James, that James was to give satisfactory collateral for the loan, and that the loan was to be conditional upon such collateral, and the bank made it with that understanding; then, if said James brought in this note on the same day, and this was in pursuance of his said promise to give collateral, and of that understanding in reference to the security upon which it was to be made (if the jury believe, from the evidence, that such an understanding was had),—then the lodgment of the note later in the day would, in the eye of the law, be the same as if it had been lodged at the moment when the credit was entered on the pass-book."

To this part of the general charge the defendant excepted, and requested the following charges, in writing: 1. " If the jury believe, from the evidence, that the note sued on was accommodation paper, then, before they can find for the plaintiff, they must believe, from the evidence, that the money was loaned by the plaintiff on the faith and security of this identical note: that if the plaintiff loaned the money to B. O. James & Co. on their due-bill, and Mr. James promised to furnish collaterals, but did not promise to furnish the note sued on in this case, then they must find for the defendant.". 2. " If the jury believe, from the evidence, that the plaintiff loaned money to B. O James & Co. on their due-bill, or demand note, and on the promise of said James to furnish good collateral security for said loan; and nothing was said about the note sued on, and there was no agreement to furnish said note as collateral security, but said James & Co. afterwards furnished said note as collateral security to said loan; then they must

[Boykin v. Bank of Mobile.]

find for the defendant." The court refused each of these charges as asked, and the defendant excepted to their refusal.

The rulings of the court on the evidence to which exceptions were reserved, as above stated, the charge given, and the refusal of the charges asked, are now assigned as error.

SATTERFIELD & YOUNG, for appellant.—(1.) The instrument sued on was not a promissory note, as no time of payment was specified, and was not governed by the commercial law.—Code, § 2094; Story on Prom. Notes, § 27; Story on Bills, § 50; *Moffatt v. Edwards*, 1 Car. & Marsh. 16. (2.) This was a patent ambiguity, which could not be aided or explained by parol evidence; and there was a fatal variance betweeen the instrument described in the complaint and that offered in evidence.—*Copeland & Brantley v. Cunningham*, 63 Ala. 394; *Sanford v. Howard*, 29 Ala. 684; *Hamner v. Cobb*, 2 Stew. & P. 383; *May & Bell v. Miller & Co.*, 27 Ala. 515; *Reed v. Scott*, 30 Ala. 640; *Foster v. Ross*, Minor, 421; *McLendon v. Godfrey*, 3 Ala. 181. (3.) The evidence as to a custom, or usage, among the banks in Mobile, ought not to have been received. "It does not follow, because a usage exists as to the object of a contract, that the contract is meant by the parties to incorporate the usage."—Whart. Ev. § 958. Before a party can be affected by a custom or usage, it must be brought home to him. *Ib.* § 962. If the defendant had lived in Mobile, and it was shown that he had bought goods of James & Co. on a credit of seventy-five days, and had given this note for the payment of the debt, the inference might be drawn, that the note was intended to be made payable seventy-five days after date; but, it being shown that he was a farmer and country merchant, and was not indebted to the payees, but executed the note for their accommodation only, there can be no legitimate inference as to the time of payment intended. In the case of negotiable paper, the rule which excludes parol evidence to vary the terms of a writing, when sued on contractually, is enforced with distinctive stringency.—Whart. Ev. § 1058. (4.) The evidence of Manly, as to the note being in the possession of the bank before any money was drawn out, ought not to have been received. As to the terms of the contract of loan—whether or not it was complete before the collateral was taken—the evidence was conflicting; but this testimony was not relevant to that issue, since the loan might well have been complete although the money had not been drawn out; and yet, the fact not being disputed that the money was not drawn out, the jury might infer that there was a stipulation or agreement that it should not be drawn out until the collateral was given. (5.) With due deference to the opinion delivered in the case of *Miller & Co.*

*v. Boykin*, at the last term, the appellant insists on the correctness of the principle asserted in the charges requested and refused, and asks a re-examination of the authorities.

W. C. WARD, *contra*, cited *Evans v. Steele*, 2 Ala. 114; *White v. Word*, 22 Ala. 442; *Conner v. Routh*, 7 How. Miss. 176; *Nichols v. Frothingham*, 45 Maine, 220; *Pearson v. Stoddard*, 9 Gray, 199; Byles on Bills, mar. 76, note 2; Daniel on Neg. Instruments, §§ 76, 1404; *Miller & Co. v. Boykin*, 70 Ala. 469; *Connerly v. P. & M. Insurance Co.*, 66 Ala. 432.

BRICKELL, C. J.—It is the province of the court to construe written instruments, and declare their legal effect. But, when the legal operation and effect of an instrument depends, not only on the meaning and construction of its words, but upon collateral facts *in pais*, and extrinsic evidence, the inference of fact to be drawn from the evidence should be submitted to the jury.—1 Brick. Dig. 428, § 2. Whether, in the present case, it should have been submitted to the jury to determine from the evidence when it was intended the note should be due and payable, it is not important to consider. The evidence was addressed to the court only, without objection, and was passed upon; and the court could, therefore, draw all such inferences as the jury could have drawn properly.

A promissory note ought, regularly, to express upon its face the time at which it is payable; but, if no time is expressed, and there is not a plain manifestation of an intention to express a day of payment, the law intervenes, and implies that it is payable on demand.—Story on Prom. Notes, § 29. Or, if a blank is left on the face of the note, for the insertion of a day of payment, and in this imperfect condition it is delivered by the maker to the payee, the latter is clothed with a discretionary authority to insert such day of payment as he may choose. *Mitchell v. Culver*, 7 Cowen, 336. Or, if a certain day of payment is intended, and by mistake or inadvertence omitted, the holder may insert it, and the insertion is not an unauthorized, material alteration, which will vitiate the note.—*Boyd v. Brotherson*, 10 Wend. 93.

This note can not, without violence to the intention of the maker, as shown upon its face, be regarded as payable on demand; nor does there seem to have been a blank left for the insertion of a day of payment; nor is there direct evidence of an intention or agreement to make it payable at a particular time. The proposition pressed by appellant is, that the note is consequently void for uncertainty. The law leans against the destruction of contracts because of uncertainty, and they are not suffered to perish, unless, after reading and interpreting

them in the light of the circumstances under which they were made, the intention of the parties can not be fairly and reasonably collected and effectuated.—*Robinson v. Bullock*, 58 Ala. 618. Words may be supplied, or may be rejected, when necessary to carry into effect the reasonable intention of the parties. In Chitty on Bills, 151, it is said : "Where there is *contradiction*, *ambiguity*, or *uncertainty* in the terms of the instrument, it may, especially against the party making or negotiating it, be so construed as to give effect to it according to the presumed intention of the parties." In illustration, reference is made to the case in which the note read, "Borrowed of J. S. 50£, which I promise *never* to pay ; " and it was decided, that the word *never* must be read as *ever*, or wholly rejected. In *Coles v. Hulme*, 8 B. & C. 568 (15 Eng. C. L. 299), the word *pounds* was supplied, to effect the manifest intent of the parties. In *Evans v. Steele*, 2 Ala. 114, a promissory note was made in 1837, payable first of January "*one thousand forty*." By intendment, giving effect to the presumed intention of the parties, who are not supposed to be doing things which are vain and useless, the court did not hesitate to supply the words *eight hundred*, and read the note as payable January first, 1840. In *White v. Word*, 22 Ala. 442, the note read : "One day after I promise to pay," &c., and was declared upon generally, as payable *one day after date*. It was said : "The court will supply the word *date*, and intend the note was payable one day after its date." A decision similar in effect was made in *Pearson v. Stoddard*, 9 Gray, 199 ; and in *Coolbroth v. Purinton*, 29 Maine, 469, the word *dollars* was supplied, making the instrument that which it was morally certain the parties intended, a promissory note for the payment of a certain sum of money.

In the cases referred to, the instruments of themselves furnished the means for the correction of the errors, or supplying the omissions. This note does not furnish the means of removing the uncertainty or obscurity as to the day of payment which was intended, and which was omitted, presumably by inadvertence. It is very clearly settled, as is insisted by the counsel for the appellant, that parol evidence is inadmissible to explain a patent ambiguity, where the doubt arises on the face of the instrument. But parol evidence is admissible to aid in ascertaining the intention of the parties. Wills are often construed by the aid of evidence of the situation of the testator, the condition of his family, and of other circumstances surrounding him at the time of execution. "Contracts," it is said by C. J. Chilton, in *Pollard v. Maddox* (28 Ala. 325), "must be interpreted in the light of surrounding circumstances. The occasion which gives rise to them, the relative position of the parties, and their obvious design as to the objects to be accom-

plished, must be looked at, in order to arrive at their true meaning, and to carry out their intention if lawful."

The fact is not controverted, that the maker of the note intended the loan of his credit to the payees, to aid them in the transaction of their business as commission-merchants in the city of Mobile; and it is apparent that the making of negotiable paper was the form he intended the loan of credit to assume. The note is expressed to be payable and negotiable at a bank in the city. It may from these facts be safely assumed, that it was intended the note should be payable at such time as notes negotiable in bank were usually made payable, and not at such a remote period that it would be incapable of negotiation. The evidence of the time negotiable paper the banks would accept had to run, was material, to aid in determining the period of time it was intended should have been expressed for the payment of the note. That fact, taken in connection with the fact that no paper was taken for seventy-five weeks, months, or years, reduced it to a moral certainty, that the word omitted from the note was *days*, and that the note should be read and construed, as if that word immediately succeeded the numerical adjective *seventy-five.*—*Conner v. Routh,* 7 How. (Miss.) 176 ; *Nichols v. Frothingham,* 45 Me. 220.

The principle is well established by our decisions, that receiving negotiable paper as collateral security for the payment of a pre-existing debt, is not acquiring it in the usual course of business, and for a valuable consideration, entitling the holder to protection against the equities and defenses of the maker. 1 Brick. Dig. 276, §§ 347–8; *Connerly v. P. & M. Ins. Co.,* 66 Ala. 434. The authorities generally recognize accommodation paper, made for the purpose of enabling the payee to obtain credit from third persons (not by the agreement of the parties limited to an application to specific uses), as an exception to the rule; but a creditor, taking such paper as security for a pre-existing debt, may enforce it, notwithstanding the want of consideration between the original parties.—2 Am. Lead. Cases, 242. The exception is not recognized in this court, and the holder of such paper, taken upon no other consideration than as collateral security for a precedent debt, is subject to the defense of a want of consideration, which could be made as between the original parties.—*Miller v. Boykin,* 70 Ala. 469. The taking of such paper as collateral security for a debt presently created, is acquiring it in the usual course of business, upon a valuable consideration, entitling the holder to protection against equities or defenses existing between the original parties, of which he does not have notice.—*Connerly v. P. & M. Ins. Co., supra; Miller v. Boykin, supra.*

The point of contention between the parties, in the City

[Washington v. The State.]

Court, was upon a matter of fact, which seems to have assumed two phases. The first was, whether the loan to James & Co. was complete, before the note in suit was transferred to the bank; and the second was, whether, if the loan was complete, the giving collaterals for its security was not a consideration inducing the bank to part with its money. As bearing upon these questions, we can not say that the fact that no portion of the money loaned was drawn from the bank, until after the collaterals were transferred, was irrelevant.

We remain of the opinion expressed in *Miller v. Boykin*, *supra*, that it is not essential, to constitute the bank a *bona fide* holder, the note in suit should, at the time of the loan, have been specified as one of the collaterals which would be transferred. It was security for which the bank was stipulating; security in the form of notes or bills the payees were capable of transferring, and which would be available if they made default in payment; and it was security in that form the payees stipulated to give. When the notes were transferred to, and accepted by the bank, the agreement of the parties was rendered specific and certain, and the bank became a holder for value.

We find no error in the rulings of the City Court, and its judgment must be affirmed.