# Thompson *v.* Maddux
# and
# Jordan & Sons *v.* Thompson.

*Bill in Equity to enjoin the Foreclosure of a Mortgage.*

1. *Transfer of negotiable note as collateral security; rights of holder and defenses by maker.*—A creditor, who receives a negotiable note as collateral security for the payment of a pre-existing debt, is not a *bona fide* purchaser for value in the usual course of trade, and is not entitled to protection against equities and defenses on the part of the maker, of which he had no notice.

2. *Same; same.*—A creditor who honestly takes negotiable paper before maturity, as collateral security for a debt contemporaneously contracted, or in pursuance of a previous agreement, made at the time the debt was contracted, is a *bona fide* purchaser for value, and as such is entitled to protection against equities and defenses on the part of the maker, of which he had no notice.

3. *Same; same; mortgage to secure such note follows it and is governed by same rule.*—Where a note transferred as collateral security is secured by a mortgage, such mortgage follows the note, is of the same character, and governed by the same rules in respect to the right of the maker of the note and mortgagor to set up equities and defenses against it, in the hands of the transferee as purchaser.

4. *Bill to enjoin the foreclosure of a mortgage; burden of proof as to bona fide purchaser.*—Where, on a bill filed to enjoin the foreclosure of a mortgage, on the ground that the debt which it was given to secure included usury, the defendant sets up that he was a *bona fide* purchaser of the mortgage and the note to secure which it was given, the burden of making proof of this defense is upon the defendant.

5. *Chancery pleading; exceptions to register's report must be reserved in accordance with the rules of practice.*—Where exceptions to particular findings of a register, as set forth in his report, are not made in accordance with the rule of chancery practice (Code of 1886, p. 827, rule 93; Code of 1896, p. 1222, rule 94), the chancellor is under no obligation to make an investigation, and the appellate court will not review the ruling of the chancellor in refusing to sustain such exception.

6. *Future contracts; when advances made therefor by broker recoverable.*—Where a cotton factor, without charging any commission, and merely for the accommodation of his customers, deals in cotton futures on their account, by buying and selling cotton contracts

[Thompson v. Maddux and Jordan & Sons v. Thompson.]

through, and remitting margins to, brokers in another State for that purpose, and the account with the brokers is kept in the name of the customers, there is nothing in such transaction of a gambling nature, so as to avoid the liability of the customers to the factor for money paid for them, as margins for the purchase of cotton futures on account of such dealings.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JERE N. WILLIAMS.

On the 18th of March, 1893, T. J. Maddux, filed his original bill in the chancery court of Bullock county against W. I. R. Thompson, Alley Jordan and Watt Jordan. The object of the bill was to enjoin the foreclosure, under the power therein, of a mortgage made by said Thomas J. Maddux to Jordan & Sons, a partnership composed of Alley Jordan and Watt Jordan, to secure a note of $3,000, which note and mortgage had been transferred by said Jordan & Sons to said W. I. R. Thompson, surviving partner of Robinson & Thompson. The complainant's bill alleged that complainant had been trading with Jordan & Sons, merchants, for a number of years, giving notes and mortgage to secure balances carried over and new advances to be made; that usurious interest was charged him on said balances carried over, viz., 10 per cent. per annum; that about the middle of January, 1892, complainant executed his promissory note for $3,000, which covered the amount of these balances, and the sum estimated to be required by him to carry on his farming operations for the year 1892, the new advance to be about $1,000. It is further averred in the bill, that said $3,000 note was assigned or deposited as collateral security with Robinson & Thompson, cotton factors and warehousemen, to secure a debt then owed by Jordan & Sons to them, or to indemnify said Robinson & Thompson for holding a large amount of cotton in their hands belonging to Jordan & Sons. That a few days after this, said Jordan & Sons failed in business and made an assignment of all their property for the benefit of their creditors, and thus were unable to advance to complainant, as they had agreed to do, to the damage of complainant. The bill then charges, upon information, that the debt from Jordan & Sons to Robinson & Thompson, or Thompson, surviving partner, was for money advanced at usurious interest by Robinson & Thompson to Jordan & Sons upon cotton

actually in store, owned by Jordan & Sons, or, that it was a debt created by Jordan & Sons with said Robinson & Thompson in reference to the purchase of cotton futures. In either event, it was charged that Thompson was not a *bona fide* holder of said note and mortgage. It is averred in the bill that Thompson was proceeding to sell under the power in the mortgage, and would do so unless restrained, and complainant offered in the bill to pay what was really due.

The prayer of the bill is for an injunction against the foreclosure of the mortgage by Thompson, and all other attempts to get possession of the mortgaged property until all other matters in controversy between them should be settled, and asks for an accounting, &c.

The defendant, W. I. R. Thompson filed his answer to the complainant's bill, and therein avers that he had no knowledge of the character of the transactions between plaintiff and said Jordan & Sons, nor whether said transactions were or were not infected with usury; that he had no notice or intimation of any usury in said $3,000 note, at or before the time it was transferred and assigned, and came into the possession of this defendant, and does not now admit or deny that there was usury in the dealings with each other; that at and before the time of the transfer to him, or to Robinson & Thompson, of said $3,000 note and mortgage he had no knowledge, information or notice that said note was to cover future advances to be made by said Jordan & Sons to plaintiff; or, that there were any conditions or qualifications attaching to said indebtedness; but, on the contrary, that this respondent received the same in good faith, believing that said note was in truth what it represented on its face to be, a real *bona fide* indebtedness of $3,000, unconditionally due and payable as therein shown, secured by the accompanying mortgage which was at the time transferred by endorsement to respondent as a security for said note. This respondent further avers that shortly after the note and mortgage had been made to Jordan & Sons, they were assigned by the latter to this respondent by indorsement, as collateral security to secure an indebtedness from said Jordan & Sons to this respondent's firm, as had been previously agreed to be done between said parties, and for future accommodations to be extended to said Jordan & Sons by this

respondent's firm ; and admits that he is the holder and owner of said note and mortgage. The respondent further denies that he had any notice of any agreement by Jordan & Sons to make any advances to plaintiff, further than is shown in the face of said mortgage ; and further denies that the debt from Jordan & Sons to respondent, or Robinson & Thompson, was for money advanced at usurious interest, or for the purchase of cotton futures bought and sold in the State of Alabama, or that said note and mortgage were illegal for any cause, and denies that he is not a *bona fide* holder thereof. The respondent further sets out in his answer, his defense, which is as follows : That for several years prior to the transfer by Jordan & Sons of this note and mortgage to them. Robinson & Thompson had been engaged as warehousemen and cotton factors in the city of Montgomery ; that during that time Jordan & Sons were cotton planters and merchants engaged in the general mercantile business at Midway, Bullock county, Alabama, and the latter had become largely indebted to said Robinson & Thompson for money advanced and paid out for them by said Robinson & Thompson ; that Jordan & Sons shipped annually to Robinson & Thompson a large number of bales of cotton for storage and sale on commission, and from time to time drew heavily against said cotton ; that during the time of these dealings said Jordan & Sons at various times requested Robinson & Thompson to purchase and sell for them in the city of New York cotton contracts, known as "cotton futures," and to remit for them the sums of money as margins ; that these orders of Jordan & Sons were transmitted by Robinson & Thompson to cotton brokers in the city of New York, and money remitted there, as requested by Jordan & Sons, and required in the city of New York under the rules of the New York cotton exchange, for and on account of Jordan & Sons ; that neither said Robinson & Thompson, nor either member of said firm, had any interest whatever in said dealings in cotton futures, nor were they or either of them in any way interested in the result thereof ; that they regarded Jordan & Sons good for their account, or that they would make their account secure, and that they, therefore, executed their orders for the remittance of margins just as they honored their orders for money, generally ; that the

account of Jordan & Sons for future cotton dealings was kept at their request in the name of Jordan & Sons., and so rendered to them ; that in all the dealings between Robinson & Thompson, or their successor, Thompson, with said Jordan & Sons, the latter were never charged more than 8 per cent. per annum for money loaned or advanced, fifty cents per bale for selling cotton, and the usual and customary rate for storage. As a part of his answer, respondent, Thompson, attaches a full, complete and correct account and statement from the beginning to the close of all the transactions and dealings between the said Robinson & Thompson, or Thompson as their successor, and the said Jordan & Sons, as exhibit A. and verified by the affidavit of said Thompson. This respondent then avers that he is the owner of said mortgage, transferred to his house or firm under the following circumstances and conditions : That said $3,000 note and mortgage were indorsed by Jordan & Sons and transferred to Robinson & Thompson in January, 1892, in compliance with an arrangement previously made by and between said parties, by which Robinson & Thompson were to make advances to and pay the orders of Jordan & Sons, and that Jordan & Sons were to keep their account secure by the deposit of collateral from time to time as requested by Robinson & Thompson ; that at the time of the transfer of this note and mortgage by Jordon & Sons, they were largely indebted to Robinson & Thompson, then represented by this respondent as surviving partner, and requested of this respondent further advances, and also that he would hold for them a large number of bales of cotton in warehouse, in Montgomery, upon which heavy advances had already been made to Jordan & Sons ; that this respondent then agreed with Jordan & Sons that he would make some further advances and hold said cotton, if they would deposit said $3,000 note and mortgage as further security and indemnity against loss in holding said cotton ; that this was agreed to by Jordan & Sons, who, then and there upon said condition, endorsed and delivered to respondent said note and mortgage. This respondent avers that further advances were made by him to Jordan & Sons as agreed upon, and that he held said cotton till after Jordan & Sons had failed and became insolvent and retired from business ; that he had no notice, knowl-

edge or information at or before said transfer of any usury, or claim of usury, or of any condition, infirmity or illegality of any kind in said note or mortgage and that he took the same in good faith, before maturity in the regular course of trade and that after said transfer of said note and mortgage to this respondent, respondent agreed with said Jordan & Sons to take this note and mortgage, and other collaterals deposited by Jordan & Sons with him in absolute payment *pro tanto* of their debt to him, and made out his account statement and forwarded to Jordan & Sons giving them credit for said collaterals at their full face value.

The defendants, Jordan & Sons, filed an answer which they prayed to be taken as a cross bill, in which they set up the fact that a certain portion of the account of Robinson & Thompson against them was for advances made by them for Jordan & Sons as margins for the purchase of cotton futures, and they prayed that these items of the account of Robinson & Thompson be eliminated. The substance of the evidence and the other facts of the case are sufficiently stated in the opinion.

On the submission of the cause an interlocutory decree was rendered, holding that W. I. R. Thompson held the note of Maddux as collateral security, and was, therefore, not a *bona fide* holder; and that the note was subject to all the defenses which could be made against it by Maddux in the hands of Jordan & Sons; but that, as against Jordan & Sons, Thompson was a *bona fide* holder of the note. The decree then ordered a reference to the register to ascertain and report the amount of usury, credits, &c., to which the account was entitled. This reference was held, and the defendant filed objections to each item of the report of the register, on the ground that the evidence did not sustain the report.

Upon a final submission of the cause, on the register's report, and on the pleadings and proof, the chancellor overruled the exceptions and the register's report, and ordered the said report confirmed. It was further ordered and decreed that the cross bill of Jordan & Sons should be dismissed; and further that the complainant, upon the payment of the amount ascertained to be due by the report of the register, be entitled to the relief prayed for. From this decree the respondent, W. I. R. Thompson, appeals, and assigns the rendition thereof as

[Thompson v. Maddux and Jordan & Sons v. Thompson.]

error. The cross complainants, Jordan & Sons prosecute a cross appeal, and assign as error the decree of the court dismissing their cross-bill.

E. P. MORRISSETT and J. R. WOOD, for Thompson.
1. Thompson is a *bona fide* holder of this note and mortgage, the note being commercial paper, taken in the due course of trade, before maturity, in consideration of holding Jordan & Sons' cotton and making future advances.—*Mayberry v. Morris*, 62 Ala. 116 ; *Miller & Co. v. Boykin*, 70 Ala. 476 ; *Saltmarsh v. Tuthill*, 13 Ala. 404 ; *Capital City Ins. Co. v. Quinn*, 73 Ala. 558 ; 3 Brick. Dig., 91, § 132.

2. It is conceded that commercial paper taken as collateral security for an antecedent debt is subject to all equities between the original parties. But, when taken as collateral security in pursuance of an antecedent agreement, the rule does not obtain.—*Miller & Co. v. Boykin*, 70 Ala. 476 ; *Coleman v. Smith*, 55 Ala. 369 ; *Watts v. Burnett*, 56 Ala. 340. Or, if taken as collateral security for an antecedent debt, and afterwards accepted in absolute payment, is freed from all equities.—*Reid v. Bank of Mobile*, 70 Ala. 210 ; *Bank v. Hall*, 6 Ala. 639.

3. If the consideration of this note were margins remitted by Thompson, to New York, at the request of Jordan & Sons, and the cotton transactions were all in that State ; if Thompson acted simply as the agent or broker of Jordan & Sons, and had no interest whatever in these speculations, then it was not only lawful for Thompson to take this collateral to secure such advances, Thompson could have maintained an action against them for the amounts so advanced, upon their refusal to reimburse him, unless there was proof that the statutes of New York pronounced it illegal and void. *Hawley v. Bibb*, 69 Ala. 52 ; *White v. Yarbrough*, 16 Ala. 109.

4. When it is shown that Thompson paid value for the note in question, in order to defeat his rights as a *bona fide* holder, the burden is shifted upon Maddux to show that Thompson had notice of the equities claimed by Maddux of set-off, usury, partial payment, &c.— *First Nat. Bank v. Dawson*, 78 Ala. 71 ; *Kyle v. Ward*, 81 Ala. 122 ; *Spira v. Hornthall*, 77 Ala. 147 ; 1 Dan'l on Negotiable Instr., § 796.

J. M. & P. W. WHITE, for Maddux.—1. Usury in the consideration of a contract by which a commercial paper is acquired, renders the holder of such paper a *mala fide* holder, and the maker of the paper can maintain any defense against it in the hands of such holder that he could have maintained against the original payee.—*Saltmarsh v. Tuthill,* 13 Ala. 390; *Carlisle v. Hill,* 16 Ala. 398; *Wailes v. Couch,* 75 Ala. 134; *McCall v. Rogers,* 77 Ala. 349; *Smith v. Lehman, Durr & Co.,* 85 Ala. 397; *Meyer Bros. v. Cook,* 85 Ala. 421.

2. If the money advanced, for which the note was pledged as security, was loaned to put up as margins in cotton future speculations, in which actual cotton was not comprehended, but settlement was to be had by the mere difference arising out of the fluctuations of the market, it was lending money to be wagered, and the lender is not a *bona fide* holder of the note.—*Lee v. Boyd,* 86 Ala. 283, and authorities cited on page 287 of the opinion.

3. The bill charges that the debt, for the security of which the note was pledged, grew out of gambling contracts, in reference to cotton futures. This is a material matter, resting *prima facie* within the respondent's knowledge, and called for a clear and distinct response. A general denial is not sufficient. Failing to deny it, the charge is taken as admitted.—Story Eq. Plead., § 852; Danl. Chan. Prac., § 844; *Smilie v. Siler,* 35 Ala. 88; *Grady v. Robinson,* 28 Ala. 289; *Moog v. Barrow,* 101 Ala. 209.

4. That a party who holds commercial paper, without notice of latent equities, as a pledge for advances to be made, is a *bona fide* holder, is not denied. But he can enforce the collateral only for the amount of the debt secured.—2 Am. & Eng. Encyc. Law, p. 391, and authorities cited to note 9. Jordan's account to Thompson, for which the latter claims the note was pledged as security, in addition to making further advances and holding cotton, is, from two causes, illegal: (1) It is usurious; and (2) It contains charges for money loaned for gambling purposes. The considerations are indivisible and inseparable, and the whole account is thereby tainted with an element destructive of the *bona fides* of Thompson's holding.—*LeGrand v. Hall,* 81 Ala. 123.

[Thompson v. Maddux and Jordan & Sons v. Thompson.]

J. D. NORMAN, for Jordan & Sons, cited *Roberts v. Taylor,* 7 Port. 251 ; *Cheatham v. Young,* 5 Ala. 353 ; *Barker v. Callihan,* 5 Ala. 708 ; *Trammel v. Gordon,* 11 Ala. 659 ; *Foreman v. Hardwick,* 10 Ala. 325 ; *Hawley v. Bibb,* 69 Ala. 52.; *Perryman v. Wolffe,* 93 Ala. 290 ; 1 Story's Equity Juris., §§ 303-306 : *Irwin. v. Williar,* 110 U. S. 499 ; *Stewart v. Schall,* 57 Amer. Rep. 327 ; 8 Amer. & Eng. Encyc. of Law, 1011.

HARALSON, J.—1. It is settled in this State, that one who takes negotiable paper as collateral security for the payment of a pre-existing or antecedent debt, is not a purchaser for value in the usual course of trade ; that such paper is open in the hands of the assignee to all defenses which could have been made against it, while in the hands of the assignor or original owner ; and that one who honestly receives a negotiable bill or note before maturity, as collateral security for a debt contracted simultaneously, or in pursuance of a previous agreement, made at the time the debt was contracted, is entitled to protection against secret equities or defects of which he had no notice.—*Miller v. Boykin,* 70 Ala. 469 ; *Boykin v. Bank of Mobile,* 72 Ala. 263 ; *Marks v. First Nat. Bank,* 79 Ala. 558. A mortgage to secure such a note, follows, and is of the same character as the note it secures, in this respect.—1 Jones on Mort., § 834.

2. The main question in this case is, whether the $3,000 note and mortgage of Maddux to Jordan & Sons, which was assigned by the latter to Robinson & Thompson, are open to defenses in their hands, such as Maddux might have made against Jordan & Sons ; or in other words, whether Robinson & Thompson were *bona fide* purchasers of said papers, against whom such defenses can not be set up. The chancellor very properly held, that as against Jordan & Sons, Robinson & Thompson were *bona fide* purchasers of said papers. There is no evidence to show that they knew or had any notice, at the time they acquired the papers as collateral, that there was any usury in or other defenses to the account, which said collaterals were transferred to Jordan & Sons to secure; but, it does show, that they had no such knowledge or notice. The chancellor also held that as to the complainants they were not *bona fide* purchasers.

Thompson in his answer to the bill states, that "Jordan

& Sons were to keep their account good by the deposit of collaterals from time to time as demanded by Robinson & Thompson;" that they were already largely indebted to defendants, requested further advances, and desired them to hold for them and not sell about 1,300 bales of cotton, on which they, Robinson & Thompson, had already made large advances, and that they, Robinson & Thompson, agreed to hold said cotton and extend further accommodations to said Jordan & Sons, in payment of their orders and other liabilities, but required said note and mortgage in further security, before complying with said request.

If the deposit of said collaterals was made to secure past indebtedness, according to the terms of a previous arrangement and agreement between the parties, at or before the indebtedness was contracted and as a condition of its being contracted, that such deposit of collaterals should be made to secure the payment of the account, then, under the rulings of this court, Robinson & Thompson, in whose dealings with Jordan & Sons, as the evidence shows, there was no usury, would be entitled to protection against equities and defects of which they had no notice.—*Miller v. Boykin*, 70 Ala. 469, *supra*; *Boykin v. Bank of Mobile*, 72 Ala. 763, *supra*; *Smith v. Lehman*, 85 Ala. 394.

Examined as a witness in the cause, Thompson stated, that "about the 15th January, 1892, W. J. Jordan, of Jordan & Sons, in response to my request to further secure the account, according to our previous agreement, came to Montgomery, and brought with him this note and mortgage of Thos. J. Maddux. At that time, I held about 1,300 bales of cotton for Jordan & Sons, against which they had already drawn nearly its full value, and cotton was steadily declining. Jordan & Sons wanted me to hold this cotton, stating that they believed the price of cotton would go up. They also wished some further advances. I was unwilling to hold the cotton, and make further advances, without additional security, but agreed to do so, if this note and mortgage for $3,000 were assigned to me as collateral to protect me against any loss that might be thus incurred."

It is evident, therefore, according to Thompson's admissions and evidence, that said note and mortgage were taken as collateral and additional security for past in-

debtedness, according to previous agreement between the parties, entered into between them at or before the indebtedness was created, and for further advances to be made to them thereafter. The burden of making proof of this defense, which was disputed, rested, however, on Thompson. The burden of proof of a fact, rests upon him who sets it up.—3 Brick. Dig. 433, § 388; *Barton v. Barton,* 75 Ala. 402; *Craft v. Russell,* 67 Ala. 9.

Jordan, in his examination for complainant, stated that "the Maddux note and mortgage were never transferred to Thompson at any time. They were simply placed in his hands to indemnify him in holding cotton until the 15th April, 1892. These papers were not placed in his hands to get money on, or to secure him for money already got from him, but was solely, as stated, to get and secure him in holding our cotton until the 15th April, 1892, and longer if necessary, which he had agreed to do in consideration of these papers and others being placed in his hands." Again he says, "our cotton was placed to secure all our indebtedness to them, and was not intended to secure one item more than another." According to Jordan's evidence, in denial of Thompson's defense, the note and mortgage were only collateral, additional to the cotton, to secure them against loss in holding the cotton. It is also manifest from Jordan's statement, that these collaterals were good in Thompson's hands for any past indebtedness, that the cotton was pledged for,—a fact distinctly admitted by Jordan & Sons in their answer. It should be stated, that it does not appear that Thompson lost anything, and if so, how much, in holding the cotton until he sold it on the 4th March, 1892, or what Jordan & Sons lost, if anything, by his selling it before 15th April of that year.

We must hold, upon this state of proof, that Thompson's defense that the note and mortgage were placed in his hands and held by him, in accordance with an agreement by Jordan & Sons that they would deposit them, at the time they contracted said indebtedness, as collateral security for the debt, fails for the want of proof, and that they were not *bona fide* purchasers as to the complainant, Maddux.

3. Thompson testified, that after the failure of Jordan & Sons, he visited them, and they agreed, that he

might take the collaterals transferred to him, in pay-
may of his antecedent debt against them, and they were
accordingly credited with them on account. For this
reason he claims to hold the collaterals as a *bona fide*
purchaser for value. Jordan denies this transaction; and
even if such an agreement as that set up as having been
made and executed, would have had the effect to change
the character of Thompson's holding of the collaterals,
from that of a mere holder of them as security for a
past indebtedness, to that of a purchaser of them for
value,—which it is unnecessary for us to decide,—yet,
Thompson's contention as to this matter, which, in any
event, he was bound to prove, has not been established
by evidence, and would fail on that account.

4. The court made an interlocutory decree of refer-
ence to the register to ascertain and report on the items
deemed proper for a final decree. In this decree, the
register was permitted to refer to and use the evidence
taken in the cause, on which it had been submitted for
decree, and was instructed to take additional evidence,
if found necessary. The parties appeared, and the reg-
ister, in execution of the decree examined them and
such witnesses as they offered, which evidence was re-
duced to writing, and with the report, was noted and
submitted to the court, under the agreement of the par-
ties for decree thereon.

The defendant, Thompson, by his solicitor, excepted
to the findings of the register, which exceptions were
severally overruled by the court.

There was no error in overruling exception No. 1.
The ground of objections was, that there was no evi-
dence to sustain it, whereas there was evidence to that
effect, and it has not been made to appear that the find-
ing was erroneous.

The second exception pertains to the allowance of the
credit to Maddux for 14½ instead of 11½ bales of cotton
delivered by him to Jordan & Sons. The several ex-
ceptions to the allowance of this item are not made in
accordance with rule 93 of chancery practice, and it was
not error, therefore, to refuse to sustain the exceptions,
although they may have been well taken.—*Mooney v.
Walter*, 69 Ala. 75; *The State v. McBride*, 76 Ala. 52;
*Warren v. Lawson*, ante p. 339. For like reasons, and
others, there was no error in overruling exceptions 3

[Bissinger v. Prince & Blackman.]

and 4. Nor do we find error in overruling exceptions 5 and 6. All the evidence in the cause, that taken before submission, and by the register on the reference, was before the court.

The decree, on the appeal of Thompson, must be affirmed.

The cross-bill filed by Jordan & Sons,—for the dismissal of which on final decree rendered on pleadings and proofs, they prosecute an appeal and assign errors on the record,—was intended to reach and eliminate from Robinson & Thompson's account against them, items for advances by them for Jordan & Sons as margins for the purchase of cotton futures. The proof is abundant to show, that these dealings were conducted by Robinson & Thompson at the instance and request, and for the accommodation of Jordan & Sons, and in the name of the latter firm, with parties in New York with whom they made deals in futures through Thompson. It was all done in that State, in the name of Jordan & Sons, and the account was so kept by the parties, there, to the contracts. Thompson had no interest in the matter, except to oblige a customer, and made no charge for conducting the business. There was nothing in the transactions of a gambling nature, as charged, to avoid the liability of the Jordans to Robinson & Thompson for money paid for them on that account. We discover no other necessity for the cross-bill, and there was no error in dismissing it, on final decree.—*Peet v. Hatcher*, 112 Ala. 514; *Hawley v. Bibb*, 69 Ala. 52.

Affirmed.