JOHN H. NICHOLS *versus* JOHN FROTHINGHAM *&* *al.*

A note payable "six    · after date," is not void for uncertainty. But the intention of the parties, if legally ascertainable, should control in the construction of it.

The ambiguity, being patent, is not explainable by parol testimony. But, from the paper itself, in the light of the circumstances in which it was given, · the actual intention of the parties may be inferred.

Whether the *intended* time of payment of such note is a question for the Court, or for the jury — *quære.*

Where such note was given to an insurance company for a policy, six months being an usual term of credit, if there be nothing in the note to indicate a different time, the law will regard it as a note payable in six months from its date.

A note payable to the order of L. M., president of M. F. and M. Ins. Co., is payable to the company; and the indorsement by L. M., *as president, &c.,* will be a sufficient transfer of it, in the absence of all proof that he was unauthorized to negotiate and indorse it.

ASSUMPSIT upon a writing declared on as a promissory note, which is as follows : —

"$1500.                                    Boston, May 1, 1854.

"Six        after date, we promise to pay to the order of L. Monson, president of the Metropolitan Fire and Marine Insurance Company, of Boston, fifteen hundred dollars at Merchant's Bank, Boston.    Value received.

"Frothingham & Workman."

On the back of the note was this indorsement, "Metropolitan F. & M. Ins. Co., by L. Monson, President."

The writ contains several counts; the first count is on a note payable to L. Monson, or his order, (and by him indorsed,) payable in six, (meaning six months,) after the date thereof; second, as for a note payable in six (meaning six months,) after its date, to said company, or their order, and indorsed by L. Monson, their president, being thereto lawfully authorized, &c.; third, for money had, &c.

Plea, general issue, and joinder. At the trial, before DAVIS, J., the plaintiff read in evidence the note declared on, and called Jesse Fogg, who testified that he is one of the as-

signees of said company, and, since March 3, 1855, has had charge of its business, the company having gone into insolvency; Luther Monson was acting president of the company in 1854–5. The witness produced and identified the record book of the stockholders, and of the directors; [from which plaintiff read sundry by-laws which relate to the authority of the president of the company, to execute papers and generally to superintend the business of the company, &c.] The witness further testified that, " as assignee, I presented to defendants, during the summer of 1855, at Montreal, a note of $1501, dated April 12, 1854, and requested its payment. They asked me if I had the other note — I inquired, what note? They turned to their books and said another note given for addition on same policy for $1500 on six months, the same policy for which they had given the note of $1501."

" I have examined the company's book of bills receivable, (which book is produced,) and find only two notes of defendants, one of April 12, 1854, for $1501, and another of May 1, 1854, for $1500."

*The plaintiff* testified that, in the first week of October, 1854, he discounted the note in suit, at its face — that he and others had a claim against the company for a loss the company had insured against, and in settlement he took this note and paid the others their part, in cash.

The election of Monson as president, and of E. W. Thayer as secretary of the company, for the years 1853–4, was shown by the company's record.

The defendants offered evidence in support of their account in set-off, which was for the amount due them from said company for losses they had sustained and which the company had insured against.

All the evidence was received, subject to all legal objections.

The case was withdrawn from the jury, the parties agreeing that the presiding Judge should report the evidence for the determination of the full Court, who are to enter such judgment as the law, and so much of the evidence as is legally

admissible require, with power to draw such inferences of fact as a jury would be authorized to draw.

*Rand*, for defendants, argued: —

That plaintiff has no title to the note or paper; it was never legally transferred to him.

It is payable to the order of L. Monson. The words "president," &c., are only used as *descriptio personæ*. It is not indorsed by *Monson*, but by the *company*.

If it is to be regarded as a note *to the company*, there is no evidence in the case that Monson had any authority to indorse or transfer it. The president had no authority *ex officio*. Ang. & Ames on Corporations, 294, c. 9, § 9, (2.)

Nor had he authority by the charter or by-laws. No vote or direct authority of any kind has been proved.

The note is void for uncertainty. "Six        after date." *Six* what? Here is a patent ambiguity, and parol testimony is not admissible in explanation. 2 Parsons on Cont. 75, 78.

*Shepley & Dana*, for plaintiff, argued: —

On the 1st of May, 1854, the defendants gave their note for $1500. The time when they were to pay this sum is left uncertain by the terms of the note.

In contracts of this sort, ambiguities and uncertainties frequently appear, and the Court, in the exercise of its discretion, constantly infers from the paper itself, or the circumstances under which it is given, or from both of them, what was the actual intention of the parties, rather than that the maker of an instrument should avoid it and derive advantage from his own want of accuracy. Thus, Courts have again and again found in the figures on the magin of the note the amount the maker agreed to pay, even where there was no sum named in the body of the note; and they do this, not because the figures are a part of the note, for when there is a discrepancy between these and the sum named in the body of the note, the figures are always rejected, but as *something* to aid the Court in concluding what was the intention of the parties.

This practice of the Courts is a far greater stretch of a discretion wisely vested in them than is the inference of the time when a note is payable, when the note is silent on the subject. No one wonders when the Court infers and declares that where a note, otherwise perfect, is wholly *silent* as to the time when payable, that note is payable presently.

So far as any thing contained in the note is concerned, it is just as void for uncertainty as the one declared on in this suit. But, where it is evident from the paper itself, it was the intention of the parties to make a note payable at some future time, and that time is left unnamed, it is the duty of the Court to leave the question of time to the jury upon proper allegations in the writ.

I. As to the nature of the instrument. It was a note payable in six months after date.

(1.) Where there is a contradiction, ambiguity or uncertainty in the terms of the instrument, it may, especially against the party making or negotiating it, be so construed as to give effect to it, according to the presumed intention of the parties. Chitty on Bills, 10th ed., 131.

(2.) A note payable "twenty-four after date," is not void for uncertainty, nor is it a note on demand; it is payable some time after date. Such a note is admissible in evidence without other testimony, under an averment in the declaration that twenty-four months after date was the time meant by the parties, the jury being the judges of the fact of the time intended. *Conner* v. *Routh*, 7 How. Miss. 176, (in Byles on Bills, 3d ed., 70, note, and in 2 Supp. U. S. Dig. p. 603, § § 17, 18.)

II. To whom payable.

In contracts not under seal, if the agent intend to bind his principal and not himself, it will be sufficient if it appears in such contract that he acts *as agent*. *Andrews* v. *Estes*, 2 Fairf. 267; *Shotwell* v. *McKown*, 2 South. 828; *Penty* v. *Stanton*, 10 Wend. 271; *Mann* v. *Chandler*, 9 Mass. 335.

A bill of exchange directed to "John A. Wells, cashier Farmers' and Mechanics' Bank, of Michigan," and accepted

by writing across the face thereof, " accepted, John A. Wells, cashier," is drawn upon and accepted by the bank, and not by Wells in his individual capacity. *Farmers' and Mechanics' Bank* v. *Troy City Bank*, 1 Doug. 457, cited 3d ed. Byles on Bills, 52, note.

The indorsement of a promissory note, payable to an insurance company, in the form " W. Earle, as secretary," is to be considered as the indorsement of the company, if nothing further appear to indicate that it was intended as the indorsement of some other party. *Nicholas* v. *Oliver*, Boston Law Reporter, February, 1858, p. 592.

III. The note was properly and legally negotiated and transferred.

By the 7th Art. of the by-laws, the cash funds, under which term notes of hand are included, were placed at the disposal of the president, whose action bound the company.

The testimony of Welch, who was a clerk for the company in 1854, is conclusive as to the power of the president to transfer the notes of the company, and shows that the notes in suit were transferred with the knowledge and consent of the directors.

Monson was really the general agent, president, treasurer and cashier of the company, and, as such, was authorized to indorse notes. *Odiorne* v. *Maxey*, 13 Mass. 178; *White* v. *Westport Manuf'g Co.*, 1 Pick. 215; and any restriction upon his authority to indorse must be proved by the party contesting it. *Wild* v. *Passamaquoddy Bank*, 3 Mason, 505; *Badger* v. *Bank of Cumberland*, 26 Maine, 428, and cases cited in Byles, p. 130, n.

Proof of the acts and proceedings of the president and directors of the company, from which it may be inferred that any person was authorized to indorse the notes of the company, is competent evidence of such authority. *Nichols* v. *Oliver*, (N. H.) in Law Reporter, Feb. 1858, p. 592. The decision in *Barker* v. *Mechanics' Ins. Co.*, (3 Wend. 98,) is opposed both to principle and authority. Angell & Ames on Corp. (3d ed.) 286, and cases cited.

The opinion of the Court was drawn up by

MAY, J. — The right of the plaintiff to recover in this action is resisted upon several grounds. And, first, it is said that the note declared on is void for uncertainty. It is in these words : —

"$1500.                              Boston, May 1, 1854.

"Six         after date, we promise to pay, to the order of L. Monson, president of the Metropolitan Fire and Marine Insurance Company of Boston, fifteen hundred dollars, at Merchants' Bank, Boston.    Value received.

                (Signed,)      "Frothingham & Workman.

The only obscurity in the note arises from the want of a definite statement of the time when payable.    A blank form was used, and the blank space, left for the insertion of the proper word to designate the time, was not filled.    Does this omission render the note void ?    Such a consequence is to be avoided if possible, and if .it can be done consistently with the rules of law.    *Rice* v. *The Dwight Manufacturing Co.*, 2 Cush. 80.

In the construction of the note, the intention of the parties is to control, if it can be legally ascertained; and the authorities cited in defence clearly show that an ambiguity, such as appears upon the face of the note, is not open to parol explanation.    It is a patent ambiguity, which is well defined as one which is "produced by the uncertainty, contradictoriness or *deficiency* of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense, without adding ideas which the actual words will not of themselves sustain."    Roberts on Frauds, p. 15.

In such a case, however, it is competent for the Court to determine from the paper itself, in the light of the circumstances in which it was given, what was the actual intention of the parties.    *Webster* v. *Atkinson,* 4 N. H., 21.    Otherwise, the maker might reap an unjust advantage from his own neglect to use clear and appropriate language, which the law

does not allow, when it is possible to ascribe to the language, under the circumstances in which it was used, any appropriate legal effect. Where there is nothing in the contract to lead to a different conclusion, and it is clearly apparent that some word indicative of the intention of the parties was intended to be used, but omitted by mistake, the parties may properly be presumed to have intended to use that word which is most commonly used by the same or other parties under the same or similar circumstances. Their probable intention, in the absence of any thing to the contrary, may well be taken as their actual intention. *Coolbroth* v. *Purinton,* 29 Maine, 469.

In the case of *Connor* v. *Routh,* 7 How. Miss., 176, cited by the plaintiff, it was held that a note payable " *twenty-four after date*" was not void for uncertainty, but was a note payable at some time after date, and was admissible in evidence, without other testimony, under an averment in the declaration that twenty-four months after date was the time meant by the parties, and it was left to the jury to judge as to the fact of the time intended. In the case before us, the Court are authorized to draw such inferences as a jury might. It does not, therefore, become material for the Court to determine whether the legal interpretation to be put upon the note as to the time of payment, in view of the circumstances attending its creation, appropriately belongs to the jury or the bench. That the time of payment meant by the parties may be determined by the one or the other, we have no doubt.

In view of all the facts in this case, we are of opinion that the word omitted in the contract after the word six was intended to be months; that it was left out by mistake, and that both parties understood the term of credit to be six months. Notes payable in six days are seldom seen, while those payable in six years are not very common. The word most frequently in use in the commercial arrangements of men, not only in our cities, but in the country, to designate the time when notes and bills fall due, is months. Especially is this so where the numerical adjective used in connection

with it is six, as in the present case. There being nothing in the note in suit to indicate that any other term of payment was intended by the parties, the law, under the circumstances, regards it as a note payable in six months from its date.

It is further contended that the note was not payable to "the Metropolitan Fire and Marine Insurance Company," but that these words in it, as well as the words "President of" immediately preceding them, were only used as *descriptio personæ*. It cannot be denied that, if the note was intended to be payable "to the order of L. Monson" as an individual, and not as president of the company, acting officially, the insertion of such descriptive words was wholly nugatory. Under the circumstances of this case, we cannot doubt that it was the intention of the parties to the note to make it payable to the order of L. Monson, as president of the Insurance Company, and so, by its very terms, the said Monson is distinctly recognized as having official authority to indorse it. Such must have been the mutual understanding of the parties. That the note may properly be regarded as payable to the order of the company, and that they are sufficiently designated as the payees, is well sustained by the authorities. In addition to those cited by the counsel for the plaintiff, upon this point, we cite the case of the *Trustees of the Ministerial and School Fund in Levant* v. *Parks & al.*, 1 Fair. 441.

It is further objected in defence that if the note is not void for uncertainty, and can properly be regarded as a note payable to the Metropolitan Fire and Marine Insurance Company or their order, in six months from its date, still it has not been legally indorsed, because it does not appear that Monson, the president of said company, had any authority to indorse it. It is, therefore, contended that the indorsement now upon it, through which the plaintiff, as indorsee, claims, is void. But we are of opinion, in the absence of all proof tending to show any want of such authority, that it is well established by the legal evidence in the case. It might, perhaps, be well questioned whether the recognition of such authority in the note itself would not, if uncontrolled by other

evidence, be sufficient to show it. In view of all the facts, the note, having been legally indorsed before it became due, or was dishonored, is not open to the equities subsisting between the original parties, and the defence which is set up therefore fails. *Defendants defaulted.*

TENNEY, C. J., HATHAWAY, CUTTING, GOODENOW, and DAVIS, J. J., concurred.