John F. McCarthy, Appellant, *v.* Krebs Pigment and Chemical Company, Respondent.

Supreme Court, Appellate Term, First Department, January Term — Filed May, 1922.

Evidence — contract — when meaning of written contract cannot be explained by parol — trade custom.

It is of minor importance whether the rule which precludes parol testimony to vary a written instrument be considered a rule of substantive law or of evidence.

Where a written contract for the sale of six hundred or more tons of zinc ashes of possibly varying content of zinc at the respective percentages of the established price for a corresponding quantity of zinc contains no words of technical import and is clear and unambiguous in every detail, and nowhere therein is there a suggestion that the price is to be reduced by being applied solely to the zinc content of a ton of ashes, parol evidence as to a trade custom, which did no more than indicate how consumers of zinc ordinarily made their contracts in the trade and was quite immaterial and ineffective to determine what the contract in suit had actually been, is inadmissible in an action to recover the balance due upon the purchase price, and a judgment in favor of defendant entered on a verdict will be reversed and judgment directed in favor of plaintiff for the amount demanded, with interest and costs.

The inherent vice in the admission of the parol testimony was illustrated by the questions asked and answers given by the witness as to the custom of the trade, counsel being finally driven to asking, " Will you please tell the court what this contract means," a palpably incompetent question by which in substance the witness was asked to usurp the functions of the court or jury or both.

Appeal by plaintiff from a judgment of the City Court of the city of New York, in favor of defendant, entered upon the verdict of a jury.

*Katz & Sommerich (Maxwell C. Katz* and *Otto C. Sommerich,* of counsel), for appellant.

*Wilder, Ewen & Patterson (John Ewen* and *Ward V. Tolbert,* of counsel), for respondent.

Bijur, J. This action was brought to recover for the balance due under a written contract for the sale to defendant by plaintiff's assignor of quantities of zinc ashes. The written contract describes the article sold as:

" Zinc ashes or skimmings — from 73% zinc contents upwards * * *. Quantity and description of material: 600 tons minimum and 1200 tons maximum of light colored zinc ashes * * * Price:

Material running 73% to 74.99% in zinc $72\frac{1}{2}$%
Material running 75% to 79.99% in zinc 74%
Material running 80% and over in zinc 77%
of the average St. Louis Spelter quotation during the month of shipment."

The " St. Louis Spelter quotation " was conceded to be the acknowledged market price for pure zinc as regularly published to the trade.

The error assigned by appellant consists of the admission into evidence of parol testimony as to a trade custom, and of a course of dealing between the parties including previous contracts and of some other similar proof for the avowed purpose of interpreting the agreement. The principle of the integrity of written instruments precludes the admission of parol evidence to vary them. It is of minor importance whether that be a rule of substantive law or of evidence. *Brady* v. *Nally*, 151 N. Y. 258; *Wallach* v. *Riverside Bank*, 206 id. 434. Of course, theoretically parol evidence may often be necessary or at least appropriate, to identify generally the parties or the subject-matter of the contract (*Marks* v. *Cowdin*, 226 N. Y. 138, 143, 144), but its limitation to such a function presents as a practical matter no question which is material to the present case. Two general exceptions to the rule excluding parol evidence are well recognized. They are tersely stated in *Braxton* v. *Mendelson*, 233 N. Y. 122, as follows: " In the absence of technical phrases whose meaning is obscure, or of latent ambiguities making the subject-matter of the contract doubtful, the court must construe it. (*Brady* v. *Cassidy*, 104 N. Y. 147) * * * In the case before us fortunately we are relieved of many of these difficulties by the existence of a written contract, complete in itself containing no latent ambiguities, no words of technical import."

See, also, *United States Printing & Lithograph Co.* v. *Powers*, 233 N. Y. 143, decided by the court on the same day. The interpretation of technical phrases may fairly be regarded as a mere translation of unfamiliar words or words of dual import, and adequate testimony as to a universal custom of the trade is a common mode of solving this difficulty. *Victor* v. *National City Bank of N. Y.*, 200 App. Div. 557; *Peisch* v. *Dickson*, 19 Fed. Cas. 123, per Story, C. J. (1815). Evidence of a custom is often resorted to also to amplify or add to some adjective element of the contract, as for example, mode of payment of delivery and the like, such provisions being deemed to be present in the contract by implication, the intention of the parties being assumed to be governed by the universal usage of the trade wherein they are engaged. Wigm. Ev.

§ 2440.   The limitations of this class of evidence are expressed in two notable cases as follows:

" Usage and custom cannot be proved to contravene a rule of law or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous and valid, they must prevail, and no evidence of custom or usage can be permitted to change them."   *Hopper* v. *Sage,* 112 N. Y. 530, 535.

" The custom, if allowed, and of the force suggested, would in effect alter the contract in a particular material to the rights of the defendants.   Evidence of it was, therefore, properly excluded." *O'Donohue* v. *Leggett,* 134 N. Y. 40.

The subject of ambiguity in a contract, while it presents theoretical difficulties, is generally capable of practical solution with reasonable precision.   The classical definition of ambiguities announced in 1597 by Sir Francis Bacon in his Maxims, rule 23, was that a patent ambiguity " appeares to be ambiguous upon the deed or instrument," but that a latent ambiguity exists where the matter " seemeth certaine and without ambiguity, for anything that appeareth upon the deed or instrument; but there is some collaterall matter out of the deed, that breedeth the ambiguity."   He adds that a patent ambiguity " is never holpen by averrement   *   *   *   for that were to make all deeds hollow and subject to averrements."

He also said (Law Tracts, p. 99): " All ambiguity of words by matter within the deed, and not out of the deed, shall be holpen by construction, or in some case by election, but never by averrement, *but rather shall make the deed void for uncertainty."*   See, also, Pollock, C. J., in *Nichol* v. *Godts,* (1854) 23 L. J. Ex. 314, and Tindal, C. J., in *Saunderson* v. *Piper,* (1839) 5 Bing. (N. C.) 425, 431.

Whether Lord Bacon's declaration is to be taken as literally true, and patent ambiguities to be held in all cases to render a contract void has been the subject of much debate.   *Colpoys* v. *Colpoys,* Jacob, 451; *Whalen* v. *Stephens,* 193 Ill. 121, 135; *Fish* v. *Hubbard's Admrs.,* 21 Wend. 651.   The disagreement arises generally rather from futile attempts at accurate terminology than from difference of opinion as to the application of the principles.

There is a practical line of demarcation difficult to define in words between a true patent ambiguity and mere lack of precision in expression which is a matter of resolution by judicial construction.

" If there be, as I think there is here, an ambiguity which is not latent but patent, according to the old distinction, that is not a matter to be solved by evidence as to the meaning of the parties — in a case, that is where there could be parties — it is to be solved

by the Court as a matter of construction." Wright, J., in *Committee of London Clearing Bankers* v. *Commissioners of Inland Revenue*, L. R. (1896) 1 Q. B. Div. 222, 227.

Salient examples of the distinction are to be found in the respective cases of *Nichols* v. *Frothingham*, 45 Me. 220, and *Augustine* v. *McDowell*, 120 Ia. 401. In the former case a note payable " six — after date " was held not to be void for uncertainty but open to judicial construction as meaning six months after date, the court saying (p. 226): " Notes payable in six days are seldom seen, while those payable in six years are not very common. The word most frequently in use in the commercial arrangements of men, not only in our cities, but in the country to designate the time when notes and bills fall due, is months  *  *  *  it was left out by mistake." On the other hand, in the *Augustine* case a mortgage covering " seventy, more or less of corn in field " was held to be not such a description as may (p. 404) " be aided by extrinsic evidence, but no description at all."

A latent ambiguity or a technical phrase may be resolved or explained respectively by parol evidence of appropriate character. Where, however, to use the language of Greenleaf (16th ed.) § 295: " If, therefore, a contract is made in ordinary and popular language, to which no local or technical and peculiar meaning is attached, parol evidence, it seems, is not admissible to show that, in that *particular* case, the words were used in any other than their ordinary and popular sense."

At section 298, he adds: " But here it is to be observed, that words cannot be said to be ambiguous because they are unintelligible to a man who cannot read; nor is a written instrument ambiguous or uncertain merely because an ignorant or uninformed person may be unable to interpret it. It is ambiguous only, when found to be of uncertain meaning by persons of competent skill and information."

Reverting now to the instant case, I am of opinion that the contract is clear and unambiguous in every detail. It provides for the sale of a quantity of 600 or more tons of zinc ashes of possibly varying content of zinc at the respective percentages of the established price for a corresponding quantity of zinc. Nowhere is there a suggestion that the price is to be reduced by being applied solely to the zinc content of a ton of ashes. Were even a question of judicial construction involved, I should say that the variation of price in direct ratio to the variation of zinc content indicates that the purchase was intended to be one of ashes containing varying quantities of zinc, and not of the zinc content alone.

The inherent vice in the admission of the parol testimony is illustrated by the very nature of the questions asked and the

Appellate Term, First Department, May, 1922.          [Vol. 118

answers given as to the custom of that trade.  It was inquired of defendant's expert: " Q. In the zinc skimmings trade is there a general custom  *  *  *  in regard to the manner of arriving at the price to be paid for the skimmings by the customer? "  He answered: " A. The custom is for the consumer to pay a given percentage price of the St. Louis price of spelter on the date of shipment for the zinc contents of the zinc skimmings as determined by a chemical assay."  " Q. In your experience are zinc skimmings ever bought on contract by a consumer of zinc in any other way than upon the basis of the amount of zinc content in the skimmings?  A. Never."

Defendant's counsel evidently appreciated that these questions and answers did no more than indicate how consumers of zinc ordinarily made their contracts in the trade and were quite immaterial and ineffective to determine what the contract had *actually* been in the case at bar.  He, therefore, continued:  " Q. When a contract for a purchase of zinc skimmings by a consumer is silent as to how the price when arrived at shall be applied, what is the general custom, if there is one, in arriving at the amount due, for the skimmings purchased?  *  *  *  A. By taking the zinc contents of the skimmings and figuring a percentage value of the St. Louis price of spelter as agreed between the purchaser and the seller."

Manifestly this, too, was not wholly satisfactory because the instant contract was not silent in the respect referred to, so the final question was asked as follows:  " Q. In your experience have the words ' price, material running 73 to 74.99 per cent. in zinc, $72\frac{1}{2}$ per cent. of the average St. Louis spelter quotation during the month of shipment  *  *  *  material running 75 to 79.99 per cent in zinc, 74 per cent. of such St. Louis spelter price  *  *  * '  a general meaning in the trade as to whether the price when arrived at shall be applied to the actual amount of zinc content in the skimmings or upon the gross amount. of skimmings?  A. It should be applied on the actual amount of zinc content in the skimmings and not on the gross amount."

In other words, respondent's counsel was finally driven to asking the witness bluntly, in substance, " Will you please tell the court what this contract means? " — a palpably incompetent question, by which the witness was asked in substance to usurp the functions of court or jury or both.

Judgment reversed, with costs, and judgment directed in favor of plaintiff for $1,136.96, with interest and costs.

Lydon and McCook, JJ., concur.

Judgment reversed.