John F. McCarthy, Respondent, v. Krebs Pigment and Chemical Company, Appellant.

First Department, March 2, 1923.

Sales — action to recover purchase price of zinc ashes — parol evidence of general custom of trade admissible to show that pure zinc content only of ashes was to be paid for at price stated in contract.

In an action to recover the purchase price of zinc ashes, it appeared that the contract of sale stated that material containing various percentages from seventy-three per cent to eighty per cent and over was to be paid in percentages mentioned of the average St. Louis spelter quotation during the month of shipment; that the only value of material known as zinc ashes is the pure zinc, and that the St. Louis spelter quotation meant the market price of pure zinc quoted in St. Louis.

*Held*, that it was proper to show that for a period of years the defendant had been buying zinc ashes from the plaintiff's assignor and the price had always been determined on the basis of the amount of zinc content in the shipment and excluding the ash content; and that evidence by experts that this method of computation of price was according to the general custom of the trade was admissible.

Appeal by the defendant, Krebs Pigment and Chemical Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 11th day of May, 1922, reversing a judgment of the City Court of the City of New York in favor of the defendant, and directing judgment in favor of the plaintiff.

*Wilder, Ewen & Patterson* [*John Ewen* of counsel; *Ward V. Tolbert* with him on the brief], for the appellant.

*Otto C. Sommerich* [*Maxwell C. Katz* with him on the brief], for the respondent.

McAvoy, J.:

The contract in suit here is for the sale and delivery during 1920, in carload lots, of from 600 to 1,200 tons of zinc ashes or skimmings, containing at least seventy-three per cent zinc contents and upwards of such percentage. The term of the contract is from January 1 to December 31, 1920. The clause disputed

relates to the price, and states that material containing various percentages from seventy-three per cent to eighty per cent and over is to be paid in percentages mentioned, of the average St. Louis spelter quotation during the month of shipment, as quoted in the American Metal Market report. There is a provision for an assay to determine the percentage of zinc contents of each load. The only value of material known as zinc ashes or skimmings is the pure zinc which may be extracted from the worthless ashes. St. Louis spelter quotation means the market price of pure zinc quoted in St. Louis.

The dispute revolves around plaintiff's claim that the percentage of the market price of zinc determined by assay is the price for the gross weight of the material including ashes as well as the zinc contained therein, the defendant claiming that the price applies only to the residuum of zinc obtained after disposing of the ashes. It was shown on the trial that for seven years prior to this contract the defendant had been buying zinc ashes and skimmings from the plaintiff's assignor, for which the price had always been arrived at on a basis of the amount of zinc contained in the shipment and excluding the ash content.

Experts also testified to this method of computation of price as the general custom of the trade, and to a trade meaning of the language that the price per pound of skimmings should be arrived at only when the actual zinc contents were found.

Specific instances covering 15,000 tons of the material and involving over $1,000,000 in price of the article, in which the contracts contained the same language as the one in suit, were introduced in evidence and showed that in each of such instances the material was paid for solely upon the basis of the zinc content.

The Appellate Term reversed a judgment for defendant which the jury had found on this proof. That court construed the contract as definite and unambiguous, and held it erroneous to admit proof of previous transactions and to allow experts to give evidence of trade custom of payment and trade meaning of language of a written contract. The opinion there says: "Were even a question of judicial construction involved, I should say that the variation of price in direct ratio to the variation of zinc content indicates that the purchase was intended to be one of ashes containing varying quantities of zinc, and not of the zinc content alone." (118 Misc. Rep. 566.)

This construction would bring about the doubtless unforeseen result that the buyer would pay more for each ton of the material than the market price of the zinc contained in it, although the ash content is valueless.

While the hardship of a contract's provision is not necessarily a reason for allowing proof to explain the meaning of wholly plain and unambiguous words, nevertheless unreasonable and unconscionable results must be considered in construction, and these may be shown either by intrinsic evidence, through argument or by extrinsic proof of the nature of the effect of their application. The language of the contract here was not so explicit or certain as to the measure of the price as to establish unquestionably that the parties intended that payment should be made according to the weight of zinc ashes, rather than that the measure of the price should be its zinc content.

No legal rule prevents the assumption that the meaning of this language can be better arrived at by the testimony of witnesses accustomed to its usage, and by examples of its observance, both by the parties to the contract and by other persons engaged in the same trade, than by judicial interpretation of what the common reader would understand it to imply.

In a similar instance it was decided: " Of course parties can specifically contract irrespective of a well-known custom prevailing in the business to which the contract relates; but when they do not so specifically contract they are presumed to contract with reference to such custom and its terms are read into the contract, not as varying its terms, but as amplifying them." (*Miller* v. *Fischer*, 142 App. Div. 172.)

A most clear exposition of the principle to be applied here is thus announced: " Parol evidence may be given to apply the written contract to the subject-matter — in some instances, to explain expressions, used in a peculiar sense, when used by particular persons and applied to particular subjects. Hence mercantile instruments are to be expounded according to the usage and custom of merchants. 3 Stark. Ev. 1033. It is perfectly right and consistent with fair dealing, to give effect to language used in a contract, as it is understood by those who make use of it. In ordinary transactions, it must be understood as mankind at large understand it; but where, in any particular trade, certain expressions acquire a peculiar meaning from the manner in which they are used, and the subjects to which they are applied, as was said by Chief Justice GIBBS in *Birch* v. *Depeyster*, 1 Stark. Cas. 167,* evidence may be received of mercantile usage, to show the meaning of the term, just as you look into a dictionary to ascertain the meaning of words." (Per SAVAGE, Ch. J., *Boorman* v. *Johnston*, 12 Wend. 573.)

---

* See 1 Stark. N. P. 210; 2 Eng. C. L. Rep. 86.— [REP.

It cannot be denied that the parties understood the language of this contract in no other sense than that which had been used in all their prior dealings, and that the evidence was properly admitted under the circumstances and in view of the language employed.

The determination of the Appellate Term should be reversed and the judgment of the City Court affirmed, with costs to appellant in this court and in the Appellate Term.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Determination reversed and judgment and order of the City Court affirmed, with costs and disbursements in this court and in the Appellate Term.