Appellant, Hibbett Sporting Goods, Inc., brought suit to enjoin the appellees from leasing a portion of Regency Square Mall to Athletic Footwear, also referred to as Athlete's Foot. Hibbett had entered into a long-term lease with Biernbaum, one of the appellees, under which Hibbett claimed that the parties had orally agreed that Biernbaum would not lease space in Regency Square Mall to "another sporting goods business or sporting goods store." This Court, on a prior appeal, found that the "oral contract" was enforceable, Hibbett SportingGoods, Inc. v. Biernbaum, 375 So.2d 431 (Ala. 1979), and remanded the case to the trial court for a decision regarding whether the proposed lease to Athlete's Foot would violate that contract.
The trial court, after a bench trial, found:
 It is uncontroverted and the court finds further that the defendant Athletic Footwear of Birmingham is engaged in the business of selling sporting goods at its retail establishment in the Regency Square Mall.
The trial court also found, however:
 [T]he terms "sporting goods," "sporting goods store," and "sporting goods business," are subject to varying descriptions, definitions, categorization, and understandings in the shopping center, athletic,
and sporting goods industries.
That court finally stated:
 Agreements of the type relied upon by the plaintiff in this cause are in restraint of trade and, consequently, must be positively expressed and understood.
The trial judge denied Hibbett's request for an injunction.
Basically, three issues are presented in this appeal: (1) whether the trial court erred in failing to enjoin the appellees from continuing to operate a retail sporting goods store in Regency Square Mall; (2) whether the trial court erred in finding that there was no "mutual understanding or meeting of the minds" between the parties in regard to the agreement; and (3) whether the trial court erred in finding that the contract in question was "in restraint of trade."
The trial court found that the contract was in restraint of trade. Because it appears that this contract is not of the type classified as "in restraint of trade," we will dispose of this issue first. Code 1975, § 8-1-1 states:
 (a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
As this Court stated in Alabama-Tennessee Natural Gas Co. v.City of Huntsville, 275 Ala. 184, 153 So.2d 619 (1963):
 In Buckalew v. Niehuss, 249 Ala. 585, 32 So.2d 299, we said: *Page 1029 
 "It is true that contracts in general restraint of trade violate the policy of the law and are therefore void, but as observed in Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889:
 "`* * * Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract. * * *
 "`Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time, and persons, where they are supported by sufficient consideration'. * * *"
 See also Denton v. Alabama Cotton Co-op. Ass'n, 30 Ala. App. 429, 7 So.2d 504.
275 Ala. at 193, 153 So.2d 619 (emphasis added).
Under the contract, Biernbaum is prevented only from leasing space in Regency Square Mall to another "sporting goods store"; therefore, the contract is sufficiently limited as to time, territory and type of business. The contract obviously is in partial restraint of trade, but because it is sufficiently limited in geographic area and type of business restrained, it is not void.
The issue which is central to a decision in this case is whether or not there was a meeting of the minds between the parties as to the meaning of the term "sporting goods store." The trial court found that the plaintiff Hibbett "failed to carry the burden of reasonably satisfying the court that there was a mutual understanding or meeting of the minds between the parties."
The principal point of dispute between the parties is the meaning of the term "sporting goods" or "sporting goods store." Hibbett contends that items such as shoes, warm-up suits and socks are sporting goods. Biernbaum classifies these as apparel or sportswear. Thus, at first blush, there would appear to be no meeting of the minds between the parties.
Both Hibbett and Biernbaum, however, were experienced in the shopping center field. Hibbett had been in the sporting goods business since 1950, and Biernbaum had been a shopping center developer since 1940. Both men were members of trade associations or, at least, subscribed to trade publications and attended conventions and shows for their particular trade.
The general rule of construction used by this Court is that "words of agreement will be given their ordinary meaning."Flowers v. Flowers, 334 So.2d 856 (Ala. 1976). The term "sporting goods store," if given its ordinary meaning, would include stores such as those operated by Athlete's Foot.
It is axiomatic that where the trial court makes a decree after hearing the witnesses ore tenus, every presumption will be indulged in favor of the trial court and its finding will not be disturbed unless palpably wrong. Smith v. McNaughton378 So.2d 703 (Ala. 1979). To determine whether the learned trial judge's findings of fact were palpably wrong in this case, we must examine the evidence presented by the parties during the trial. The plaintiff introduced into evidence the telephone directories of various cities (Atlanta, Birmingham, Chicago, Dallas, Jackson, and Nashville) which showed that Athlete's Foot was listed in the yellow pages of those directories under the classification "Sporting Goods — Retail." This evidence Hibbett contended, showed that Athlete's Foot considered itself to be a "sporting goods store." Hibbett also introduced into evidence several articles from sporting goods trade journals in support of its contention that Athlete's Foot was viewed in the trade as a "sporting goods store."
Athlete's Foot, on the other hand, presented expert testimony from shopping center developers who testified generally that they considered Athlete's Foot to be a "shoe store" instead of a "sporting goods store." *Page 1030 
All of this evidence presented by the parties, while of some benefit to us in determining the issue presented on appeal, nevertheless, is of little value to us as we consider the critical question of what Hibbett and Biernbaum mutually understood a sporting goods store to be at the time theyentered into their agreement.
The important question is how was Athlete's Foot categorized by Biernbaum and Hibbett at the time they made their agreement. It is clear that there was a period of discussion between representatives of Athlete's Foot and Biernbaum prior to their entering into the lease agreement which is the subject matter of this action. During that time, Hibbett became aware of the discussions and advised Biernbaum of his agreement not to lease to another "sporting goods store." Biernbaum told Hibbett that he would limit Athlete's Foot to selling only "sneaks and flats" if, in fact, he did lease to Athlete's Foot, and that he would enforce that limitation. Subsequently, he instructed Henry King, the leasing agent for Regency Square to tell representatives of Athlete's Foot that they could sell only "sneaks and flats." Athlete's Foot refused to lease with such limitations in effect. Biernbaum subsequently entered into the lease with Athlete's Foot.
The evidence of what Biernbaum actually did after he entered into the agreement with Hibbett shows indisputably that at that time, he and Hibbett were in agreement that if Biernbaum leased to Athlete's Foot and if Athlete's Foot sold anything other than "sneaks and flats," the agreement would be violated.
This Court has held that "a promisor is held strictly to the literal terms of his promise." Alpine Construction Co. v. WaterWorks Board of City of Birmingham, 377 So.2d 954 (Ala. 1979);Poughkeepsie Savings Bank v. Highland Terrace Apartments,352 So.2d 1108 (Ala. 1977). Thus, based on the evidence presented, we determine that the trial court's finding that there was no meeting of the minds on the definition of a "sporting goods store" is clearly wrong. As between Hibbett and Biernbaum, it is clear that Biernbaum's understanding and Hibbett's were the same at the time the agreement was made. Under the facts of this case, as shown by the evidence, Biernbaum, by his very actions, showed that he understood that Athlete's Foot was a "sporting goods store." We obviously do not decide whether Athlete's Foot would be a "sporting goods store" or a "shoe store" under a different factual setting. We only decide this case.
The judgment is due to be reversed and remanded.
REVERSED AND REMANDED.
JONES, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs in the result.