**Frances GRANT, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.**

**Civ. A. No. 82–G–1109–S.**

United States District Court,
N.D. Alabama, S.D.

Feb. 2, 1984.

Kelby Strickland, Strickland, Stoddard & McDuffie, Birmingham, Ala., for plaintiff.

Jack B. Porterfield, Jr., Porterfield, Scholl, Bainbridge, Mims & Harper, P.A., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

This declaratory judgment suit arises out of the death claim filed by the plaintiff for the proceeds of a group life insurance policy held by the defendant on her deceased husband. Plaintiff is an Alabama resident. Defendant, a New York based corporation, provides insurance on the lives of employees of United States Steel Corporation (USS). At issue is whether the suspension of the deceased from employment at USS constitutes a termination of employment, within the meaning of the policy, sufficient to trigger the 31-day grace period for exercising the conversion privilege. Under the policy, when group coverage terminated the policy holder had 31 days to convert his group policy to an individual policy.

### FACTS

The facts are not in dispute. On July 26, 1979, the deceased was suspended for three days for being absent without cause and/or failing to report properly. The suspension notice provided that if this occurrence were repeated more severe discipline would be imposed, with the possibility of permanent discharge. The warning went unheeded. For the same reasons, USS suspended the plaintiff on September 20, 1979, for five days, pending a discharge hearing. At the request of USS this hearing was continued until September 28, 1979. At the hearing, a decision to discharge the deceased was made. Notice of the discharge was mailed to the deceased on October 1, 1979.

Three days later, USS mailed the deceased a conversion notice providing that he had 31 days from September 20, 1979, the alleged date of his termination, to exercise his conversion privilege. The privilege was not exercised. Upon the death of the deceased on October 28, 1979, more than 30 days after the alleged termination date and the date the hearing was initially scheduled, plaintiff filed a claim for the group life policy proceeds. The defendant denied coverage, stating that the deceased allowed the policy to expire without exercising the conversion privilege. Contending that the 31-day grace period did not commence until the date a decision was made to terminate the deceased, or until notice of the discharge was mailed to him, plaintiff filed suit. The policy provided $10,500.00 coverage.

## DISCUSSION

Under the policy, the cessation of active work is considered termination of employment. When employment terminates, group coverage expires, subject to the 31-day conversion privilege. Since the deceased actually stopped working for USS on September 20, 1979, the defendant argues that is the proper date from which to compute the grace period. Under this view, coverage on the deceased lapsed before he passed away. The policy provides, however, two exceptions as to when cessation of active work shall constitute termination of employment. In specific, Section 9.13 provides that suspended employees are to be treated the same as laid-off employees. These employees are granted coverage for the first six months of any lay-off, and thereafter for an additional 18 months if the necessary premiums are remitted. In any event, insurance coverage ends when an employee's employment is terminated.

The practical effect of the defendant's argument is that the termination and suspension occurred on the same day. There is no dispute that the policy provides that when an employee stops working he shall be considered terminated. Yet, there is doubt whether this standard is the sole measure for defining termination. The policy does not delineate this standard to be exclusive. The court is of the opinion that it is not. Furthermore, the construction given to the policy language by the defendant ignores the usual and ordinary meaning given to the terms suspension and termination. *See Scott v. East Alabama Educ. Foundation, Inc.*, 417 So.2d 572 (Ala.1982); *Hibbett Sporting Goods, Inc. v. Biernbaum*, 391 So.2d 1027 (Ala.1980).

Here, the deceased was suspended pending a discharge hearing. Generally, the purpose of such a hearing is to ascertain whether the employee should be discharged, or subjected to less severe discipline. The length of suspension may vary, as there is no predetermined period. Here, USS apparently believed that only a five-day suspension was necessary before reviewing the personnel file of the deceased. Yet, the policy contemplates suspensions of six months or longer. Employees suspended for this length of time, as previously indicated, were required to receive the same coverage as that extended to laid-off employees. The defendant's position would be clearly untenable if the present suspension had been longer. If an employee was discharged at a hearing held 45 days after the suspension, under the defendant's view the employee's 31-day grace period would have lapsed before the hearing date. This would be the natural, but inequitable, result one would reach if the "cessation of active work" standard were strictly applied. The defendant's argument has force here solely because the period of suspension was rather short, and because U.S. Steel did in fact terminate the deceased.

■ It is not normal that a termination and suspension be concurrent. This court is bound by the rule that policy terms must be given their ordinary and plain meaning. *See Scott, supra; Biernbaum, supra.* The result reached in applying this rule is that the termination could not, and did not, occur until after the suspension.

■ The defendant has also argued that the effective date of discharge should be September 25, 1979, the date the hearing was initially scheduled, despite the fact that the hearing was actually held September 28, 1979. Neither case law nor reason supports giving the decision to terminate the deceased retroactive effect. Nor does the policy provide that any decision made at a rescheduled hearing will be applied retroactively to the initial hearing date. If the policy arguably should have this interpretation read into it, then at best, the policy is ambiguous and must be construed in the plaintiff's favor. *See Childress v. Foremost Ins. Co., Inc.*, 411 So.2d 124 (Ala. 1982); *Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Company*, 378 So.2d 693 (Ala.1979).

Both parties contend that the decision of the Alabama Supreme Court in *Cheek v. Vulcan Life & Accident Insurance Co.*, 52

Ala.App. 192, 290 So.2d 654 (1973), supports their view. This case involved a suit by the widow of a deceased employee to recover proceeds of a group insurance policy on her deceased husband. The defendant notified the deceased in writing on October 31, 1966, that his employment with the local county had been terminated. This dismissal notice was received November 4, 1966, and was conditioned on the approval of the local personnel board. The board, however, never approved of the dismissal. Absent the board's approval, the widow argued that there was no termination within the meaning of the policy. The defendant argued that the deceased failed to exercise his conversion privilege within 31 days of the date he received notification of his dismissal. The *Cheek* court agreed, holding that the term "termination of employment" is clear and unambiguous and means when actual work ceases. The defendant contends that this decision supports the view that coverage for the deceased ceased when he physically stopped working.

That decision, however, must be construed in light of the facts there presented. It did not involve an intervening suspension after the employee physically stopped working. If termination occurs when the employee physically stops working, then the suspension provisions of the policy have no practical effect. The very definition of suspension, in the employment context, means that the employee has physically stopped working and that his future relationship with the company remains to be determined. By contrast, when an employee is discharged, he loses the perquisites associated with his former position and his relationship with the company is severed. The *Cheek* decision is not on point and therefore not controlling.

In conclusion, the court is of the opinion that the deceased was officially discharged when he received notification of it. Yet, even if this court were to find that the termination occurred at the discharge hearing on September 28, 1979, the 31-day grace period had not expired at the death of the deceased. This holding allows the policy terms "suspension," "termination of employment," and "cessation of active work" to be given their natural and ordinary meaning. If another construction were applied to them, ambiguity and confusion would result; any ambiguity must be resolved in favor of the insured. Consequently, the court hereby declares that the group policy provisions were in effect upon the death of the deceased. An order consistent herewith is being entered.