COBB, Chief Justice.[1]
Kelmor, LLC, James S. Pace, and Melvin Zimmerman, the plaintiffs in a breach-of-contract action in the Shelby Circuit Court, appeal from a summary judgment in favor of the defendants, Alabama Dy *786 namics, Inc., and Gene Ernest. We affirm.

I. Factual and Procedural History

Ernest owns Alabama Dynamics, Inc., an industrial manufacturing and fabrication business located in Calera. In early 2001, Ernest decided to sell the business he had started nearly 30 years earlier. He hired John Clark of an entity known as Business Resources to locate a buyer for his company. Soon thereafter Clark presented Zimmerman as a potential buyer. On February 21, 2001, Zimmerman presented Ernest with a letter of intent regarding the purchase of Alabama Dynamics. The letter of intent stated that the closing of the transaction would occur on or before April 30, 2001. The letter of intent also stated that the letter of intent would expire on April 30, 2001, if the transaction was not consummated by that date. After realizing that the transaction would not be consummated by April 30, 2001, because of problems in securing financing for the purchase, Zimmerman presented Ernest with another letter of intent on April 11, 2001. This second letter of intent provided that Ernest would discontinue any discussion with any party other than Zimmerman for the sale of the company and its assets until the closing date in the letter, May 31, 2001. On June 4, 2001, Zimmerman’s attorney wrote Ernest’s attorney asking that the closing date be extended to June 30, 2001. The following day Ernest’s attorney wrote Zimmerman’s attorney stating that Ernest had agreed to extend the closing date to June 30, 2001.
The sale of Alabama Dynamics did not close by June 30, 2001, again because of problems in securing financing. In July 2001, a “Sale of Assets Agreement” was executed between Alabama Dynamics and Ernest, as the sellers, and Zimmerman Acquisition, Inc., and Zimmerman, as the
purchasers. The agreement provided that the closing would occur on August 31, 2001. Once again, that deadline passed without the closing of the transaction.
In June 2002, Zimmerman, his business partner Pace, and Kelmor, LLC, a limited liability corporation owned by Zimmerman and Pace (hereinafter referred to collectively as “Kelmor”), entered into another asset-purchase agreement with Ernest and Alabama Dynamics (“the asset-purchase agreement”). The asset-purchase agreement contained the following pertinent provisions:
“1. SALE OF ASSETS AND PURCHASE PRICE.
[[Image here]]
“(c) Purchase Price Adjustment: Seller and Purchaser shall jointly perform an examination of Seller[’]s balance sheet as of Date of Closing and the Purchase Price shall be adjusted to reflect any changes therein since June 30, 2002. Any increase or decrease in total assets, excluding plant and equipment, and total liabilities shall be reflected by an identical change in the total purchase price and the amount of cash due at closing. All items are to be accounted for in accordance with Generally Accepted Accounting Principles (GAAP), consistently applied.
[[Image here]]
“2. CLOSING AND PRORATIONS.
“(a) The purchase and sale contemplated hereunder shall be closed on June_, 2002. The closing shall take place at the offices of Kracke, Thompson and Ellis in Birmingham, Alabama.
[[Image here]]
“12. MISCELLANEOUS PROVISIONS.
[[Image here]]
*787 “(f) Time is of the Essence: Time is of the essence of this Agreement.”
Although the asset-purchase agreement called for the closing of the sale to take place “on June_, 2002,” the sale was not completed by June 30, 2002. The record indicates that Kelmor was unable to obtain financing before June 30, 2002.
On July 23, 2002, Ernest and Alabama Dynamics’ attorney sent a letter to Kel-mor’s financier, which stated, in pertinent part:
“This letter will serve as confirmation that Alabama Dynamics, Inc. has sufficient and available funds to pay the closing costs of the Purchaser, Kelmor, LLC, on the l’eferenced transaction. We have been informed the closing costs will not exceed One Hundred and Sixty Thousand Dollars ($160,000.00). The contemplated payment of these closing costs by Alabama Dynamics, Inc. will result in the Sale of Assets Agreement being modified to reflect this change in terms.
“This letter is not to be constructed or considered to be a promise or agreement to pay the closing costs of the Purchaser, Kelmor LLC, unless and until each and every term and provision of the Sale of Asset[s] Agreement referenced above has been completely fulfilled. If for any reason, performance contemplated by the Sale of Assets Agreement does not occur[,] no claim can be made on any of the assets of Alabama Dynamics, Inc. for cost or fee incurred by you. Any claim for reimbursement of costs or fees due you must be made on your borrower, Kelmor, LLC.”
By August 21, 2002, the transaction still had not been closed. In a letter dated August 21, 2002, to Kelmor’s attorney, Ernest and Alabama Dynamics’ attorney wrote:
“Please consider this letter as notification to you on behalf of my clients, Alabama Dynamics, Inc. and Gene Ernest, that unless the Sale of Assets Agreement by and between Alabama Dynamics, Inc. and Gene Ernest as Sellers and Kelmor, LLC and Melvin Zimmerman and James S. Pace as Purchasers, is not closed on or before 5:00 p.m. August 23, 2002, we shall consider it null and void and of no force and effect. The Closing contemplated by the Agreement was to take place in June 2002.
“My client has been extremely patient with the innumerable delays which have occurred in closing this Agreement. Our client can no longer agree to continued delays in Closing; therefore, please accept this letter has [sic] notice that unless this matter can be closed by the date set out above, we will consider it null and void and of no force and effect.
“If the matter does not close by the date set out above we will instruct the Broker to forthwith return any earnest money being held to your clients. If you have any questions, please do not hesitate to call me.”
Kelmor did not respond to the letter, and the sale did not close on August 23, 2002.
On September 5, 2002, Zimmerman and Pace, along with a third individual, arrived at the premises of Alabama Dynamics to conduct an environmental study.[2] Zimmerman and Pace contend that they had contacted Clark to arrange the visit, who in turn had told Ernest’s wife that they would be visiting the premises; Ernest, *788 however, alleges they arrived unannounced. Upon their arrival, Ernest informed Zimmerman and Pace that the sale would not occur and ordered them off the property.
On September 18, 2002, Kelmor sued Ernest and Alabama Dynamics, alleging breach of contract. Business Resources intervened in the action and also brought a breach-of-eontract claim against Ernest and Alabama Dynamics. Ernest and Alabama Dynamics moved the trial court for a summary judgment as to Kelmor’s breach-of-contract claim as well as Business Resources’ breach-of-contract claim. The trial court entered a summary judgment for Ernest and Alabama Dynamics on all claims. Kelmor appeals.[3]

II. Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

III. Analysis

A. Did, the trial court enter the summary judgment before Ernest and Alabama Dynamics filed their narrative stcm-mary of undisputed material facts?

Much of Kelmor’s brief is devoted to the argument that Ernest and Alabama Dynamics’ motion for summary judgment was purportedly not supported by a narrative summary of undisputed material facts and that, therefore, the summary judgment was improper. Rule 56(c)(1), Ala. R. Civ. P., states:
“(1) Form of Motion and Statement in Opposition Thereto. The motion shall be supported by a narrative summary of what the movant contends to be the undisputed material facts; that narrative summary may be set forth in the motion or may be attached as an exhibit. The narrative summary shall be supported by specific references to pleadings, portions of discovery materials, or affidavits and may include citations to legal authority. Any supporting documents that are not on file shall be attached as exhibits. If the opposing party contends that material facts are in dispute, that party shall file and serve a statement in opposition supported in the same manner as is provided herein for a summary of undisputed material facts.”
The case-action summary indicates that Ernest and Alabama Dynamics filed their summary-judgment motion on September 13, 2005, and that the trial court entered a summary judgment in them favor on November 14, 2005. It also indicates that *789 Ernest and Alabama Dynamics filed their evidentiary submission in support of their summary-judgment motion on December 15, 2005, and a memorandum of law in support of their motion for a summary judgment, containing a narrative summary of undisputed material facts, on December 19, 2005, over a month after the trial court had entered the summary judgment. The record contains two copies of Ernest and Alabama Dynamics’ narrative summary of undisputed material facts and memorandum of law in support of their motion for summary judgment, one of which indicates that it was filed in the circuit clerk’s office on December 19, 2005; the other does not indicate that it was received in the circuit clerk’s office. Kelmor apparently was served with a copy of the memorandum of law and narrative summary of undisputed facts, because on October 11, 2005, it responded to Ernest and Alabama Dynamics’ arguments in the memorandum of law in its brief in opposition to their summary-judgment motion.[4] Kelmor argues that the trial court could not have properly entered a summary judgment without the submission of a narrative summary of undisputed material facts by Ernest and Alabama Dynamics. Furthermore, Kelmor argues that ex parte communications took place between the trial court and Ernest and Alabama Dynamics because, it reasons, the trial court’s summary-judgment order contains many of the arguments subsequently made by Ernest and Alabama Dynamics in their memorandum of law and supported by their narrative summary of undisputed facts.
Kelmor correctly notes that a summary-judgment motion cannot be granted if it is not accompanied by a narrative summary of undisputed material facts supporting the motion.
“ ‘A summary judgment is not proper if the movant has not complied with the requirements of Rule 56. Moore v. ClaimSouth, Inc., 628 So.2d 500 (Ala. 1993); see also Thompson v. Rehabworks of Florida, Inc., 727 So.2d 807 (Ala.Civ.App.1997), Hale v. Union Foundry Co., 673 So.2d 762 (Ala.Civ. App.1995). While the Rule provides that a movant may base its motion upon the pleadings and other documents on file with the court, it does not alloiv a pariy to file a simplistic motion devoid of a narrative summary and specific references to those portions of the record demonstrating that no genuine issue of materialfact exists.’ ”
Borom v. Thaggard, 926 So.2d 331, 332 (Ala.2005) (quoting Northwest Florida Truss, Inc. v. Baldwin County Comm’n, 782 So.2d 274, 277 (Ala.2000)). Because the record indicates that the narrative statement of undisputed material facts may not have been before the trial court when it entered the summary judgment, this Court on August 14, 2007, issued a show-cause order as to why Kelmor’s notice of appeal should not be stricken as being from a void judgment. In response to the show-cause order, Ernest and Alabama Dynamics asserted that they attempted to file them motion for a summary judgment and the evidentiary submission and memorandum of law containing the narrative summary on September 13, 2005. However, the circuit clerk’s office would accept only the summary-judgment motion and instructed Ernest and Alabama Dynamics’ counsel to submit the evidentiary submission and memorandum of law directly to the trial court. Ernest and Ala *790 bama Dynamics further asserted that they then submitted the evidentiary submission and memorandum of law to the trial court in open court at a hearing on September 19, 2005. According to Ernest and Alabama Dynamics, after they learned that Kelmor intended to appeal the summary judgment, their counsel reviewed the online case-action summary and realized that the case-action summary did not reflect the filing of the memorandum of law and the evidentiary submission. Ernest and Alabama Dynamics then refiled the eviden-tiary submission and memorandum of law with the trial court on December 15 and 19, 2005, respectively.
Unable to determine for certain from the response to our show-cause order that Ernest and Alabama Dynamics’ narrative summary of undisputed material facts was before the trial court when the summary judgment was entered, this Court on October 25, 2007, in accordance with Rule 10(f), Ala. RApp. P., remanded this cause for the trial court to make an entry on the case-action summary indicating whether Alabama Dynamics and Ernest’s narrative statement of undisputed facts was before the trial court when it entered the summary judgment or to provide other documentation so indicating. On remand, the trial court entered an order stating that the narrative summary of undisputed facts was given to the trial court in open court on September 19, 2005, and thus was before the court when it entered the summary judgment. This Court is satisfied that the narrative summary of undisputed material facts was before the trial court when the summary judgment was entered; thus Kelmor’s argument that it was not is without merit.

B. Is the asset-purchase agreement ambiguous as to the closing date?

Kelmor asserts that an ambiguity exists in the asset-purchase agreement. Ernest and Alabama Dynamics argue that no ambiguity exists.
“ ‘ “Whether a contract is ambiguous is a question of law for the trial court to determine.” P & S Business, Inc. v. South Central Bell Tel. Co., 466 So.2d 928, 931 (Ala.1985) (citing Haddox v. First Alabama Bank of Montgomery, 449 So.2d 1226, 1228 (Ala.1984); Food Service Distributors, Inc. v. Barber, 429 So.2d 1025, 1028 (Ala.1983)). In interpreting a contract, the “ ‘words of the agreement will be given their ordinary meaning.’ ” Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala.1980) (quoting Flowers v. Flowers, 334 So.2d 856, 857 (Ala.1976)). An “instrument is unambiguous if only one reasonable meaning clearly emerges.” Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App.1990); see also Flowers, 334 So.2d at 857. “If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment. However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.” McDonald v. U.S. Die Casting & Development Co., 585 So.2d 853, 855 (Ala.1991) (citations omitted).’ ”
Ex parte Gardner, 822 So.2d 1211, 1217 (Ala.2001) (quoting Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186 (Ala.1992)).
“In written instruments, two types of ambiguities can arise: a patent ambiguity and a latent ambiguity. McCollum v. Atkins, 912 So.2d 1146, 1148 (Ala.Civ. App.2005). A patent ambiguity results when a document, on its face, contains unclear or unintelligible language or lan *791 guage that suggests multiple meanings. Thomas v. Principal Fin. Group, 566 So.2d 735, 739 (Ala.1990). On the other hand, ‘[a]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.’ 7⅛”
Smith v. Ledbetter, 961 So.2d 141, 145 (Ala.Civ.App.2006).
The asset-purchase agreement contains two provisions that arguably suggest different closing dates. Section 2(a) of the asset-purchase agreement states: “The purchase and sale contemplated hereunder shall be closed on June_, 2002.” Ernest and Alabama Dynamics argue that this section, coupled with the time-is-of-the-essence clause, mandates a closing no later than June 30, 2002. Section 1(c) states, in pertinent part: “Seller and Purchaser shall jointly perform an examination of Seller[’]s balance sheet as of Date of Closing and the Purchase Price shall be adjusted to reflect any changes therein since June 30, 2002.” Kelmor argues that this section necessitates a closing date after June 30, 2002.
Ernest and Alabama Dynamics argue that Section 1(e) is a “true up” provision that allows for an adjustment in the purchase price after the June closing calculated upon the June 30 balance sheet. They note that this Court has previously said in regard to “true up” provisions that it “will give effect to the plain expressed intention of the parties by determining that the objective manifestation of intent was to be bound by the review financial statement.” Murray v. Alfab, Inc., 601 So.2d 878, 888 (Ala.1992).
Although the parties argue that sections 1(c) and 2(a) of the asset-purchase agreement indicate two possible closing dates, “the intent of the contracting parties is discerned from the whole of the contract.” Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000). Furthermore, “ ‘[i]t is well settled that where there is uncertainty and ambiguity in a contract, it is the duty of the court to construe the contract so as to express the intent of the parties.’ ” BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 216 (Ala.2001) (quoting Weathers v. Weathers, 508 So.2d 272, 274 (Ala.Civ.App. 1987)).[5] Given that the asset-purchase *792 agreement called for a closing “to occur on June _, 2002,” and that it stated that “[t]ime is of the essence of this Agreement,” we conclude that the intent of the parties was for the purchase to close no later than June 30, 2002. Therefore, the trial court was correct in holding that the asset-purchase agreement called for a closing sometime in June 2002.
Kelmor also argues that the trial court erred in holding that it “[had] failed to establish any valid waiver or extension of the closing date past June, 2002.” The trial court noted that Kelmor had failed to prove any of the requisites of a valid waiver of a contractual provision. Kelmor notes that Alabama Dynamics and Ernest’s attorney wrote Bayview Financial, Inc., Kelmor’s financier, on July 23, 2002, after the closing date contemplated in the asset-purchase agreement, stating: “The contemplated payment of these closing costs by Alabama Dynamics, Inc. will result in the Sale of Assets Agreement being modified to reflect this change in terms.” Kelmor further notes that in his letter of August 21, 2002, Alabama Dynamics and Ernest’s attorney stated that “unless the Sale of Assets Agreement ... is not closed on or before 5:00 p.m. August 23, 2002, we shall consider it null and void and of no force and effect.” Thus, Kelmor argues, the closing date contemplated by the asset-purchase agreement was extended past June 30, 2002, and the parties to the asset-purchase agreement waived compliance with that provision.
Kelmor, however, failed to cite this Court to any authority in support of its argument. “Rule 28(a)(10), Ala. R.App. P., requires that an argument in an appellant’s ... brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ” Long v. Bryant, 992 So.2d 673, 683 (Ala.2008). It is not the duty of this Court to undertake to do Kelmor’s legal research when it offers only bare factual allegations in support of its argument. See City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998) (“[I]t is neither this Court’s duty nor its function to perform an appellant’s legal research.”). “ ‘[W]here no legal authority is cited or argued, the effect is the same as if no argument had been made.’ ” . Steele v. Rosenfeld, LLC, 936 So.2d 488, 493 (Ala.2005) (quoting Bennett v. Bennett, 506 So.2d 1021, 1023 (Ala.Civ. App.1987)).
Kelmor further contends that the trial court erred in holding that any modification of the asset-purchase agreement would have been void under the Statute of Frauds. Specifically, the trial court held:
“However, even if the Court were to assume that [Alabama Dynamics and Ernest] did agree to extend the duration of the [asset-purchase agreement], the Court finds that summary judgment is still warranted because any such modification of the [asset-purchase agreement] would have been invalid under the Statute of Frauds. Unwritten agreements to change a material term of a contract *793 for the sale of land in exchange for promissory notes, including one for time of performance, are void. This is the same regardless of whether [Alabama Dynamics and Ernest] engaged in continuing discussions regarding a sale of the business after June. Accordingly, the Court finds as a matter of law that because time was expressly ‘of the essence,’ any modifications of the contract duration would be a substantive modification subject to the Statute of Frauds and that there was no written modification of the [asset-purchase agreement] extending the time for closing that complied with the Statute of Frauds.”
Kelmor argues that the letters of July 23 and August 21, 2002, from Alabama Dynamics and Ernest’s attorney meet the requirements of the Statute of Frauds and thus served to extend the closing date. Section 8-9-2, Ala.Code 1975, provides:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.”
Kelmor also cites Cammorata v. Woodruff, 445 So.2d 867, 872 (Ala.1983), in which this Court held:
“The general rule is that a contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement. ... While the authorities are divided as to whether a written contract falling within the statute of frauds may be orally modified as to time of performance, it is generally agreed that if the oral modification is not just an extension of time, but goes to the substance of the contract, the modification is invalid.”
Kelmor’s argument fails because the July 23, 2002, letter concerned the payment of closing costs; it did not mention an extension of the closing date. Furthermore, because the asset-purchase agreement specifically stated that time was of the essence, any extension of the closing date would have been a substantive change to the terms of the asset-purchase agreement. Therefore, any such extension would have had to meet the requirements of the Statute of Frauds, and the trial court was thus correct in entering a summary judgment in favor of Alabama Dynamics and Ernest.

IV. Conclusion

Because the asset-purchase agreement, when it is considered in the whole, indicates that it was the intent of the parties to the agreement to close the sale during the month of June 2002 and because the parties never effectively extended the closing date beyond June 30, 2002, the trial court was correct in entering a summary judgment in favor of Alabama Dynamics and Ernest. The summary judgment is therefore affirmed.
AFFIRMED.
STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, WOODALL, and MURDOCK, JJ., dissent.

. This case was originally assigned to another Justice on this Court; it was reassigned to Chief Justice Cobb.

. Kelmor now argues on appeal that the performance of an environmental study before closing was the responsibility of Ernest and Alabama Dynamics. The asset-purchase agreement, however, states that "an environmental audit of the Property satisfactory to Purchaser in all respects” was Kelmor's responsibility.

. Business Resources’ appeal was dismissed as untimely filed. Business Resources v. Alabama Dynamics, Inc. (No. 1050521, August 9, 2006).

. Although the record contains a copy of Kel-mor’s brief stamped as received by the circuit clerk on October 11, 2005, the case-action summary does not contain an entry indicating that the brief was received.

. In Extermitech, Inc. v. Glasscock, Inc., 951 So.2d 689, 694-95 (Ala.2006), this Court explained the procedure for resolving an ambiguity in a contract:
"Some of this Court's decisions indicate that, once the court determines that a contract is ambiguous, it is for the finder of fact to resolve the ambiguity. See, e.g., McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991), and Ex parte Harris, 837 So.2d 283, 290 (Ala. 2002). However, as articulated in Alfa Life Insurance Corp. v. Johnson, 822 So.2d 400, 404-05 (Ala.2001), the court, as a matter of law, should apply rules of construction and attempt to resolve any ambiguity in the contract before looking to factual issues to resolve the ambiguity. The process for interpretation of a contract was described in Alfa as follows:
“ 'When a trial court is [faced] with a contract issue, it is important for the trial court to determine as soon as practicable the "threshold issue” whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must " 'determine the force and effect of the terms of the contract as a matter of law.’ ” However, if the trial court finds the contract to he ambiguous, it "must employ established rules of contract construction to resolve the ambiguity." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala. 1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
“If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical
*792 construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.”
" ‘Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury.'
"822 So.2d at 404-05 (some citations omitted; emphasis added). See, also, Boykin v. Bank of Mobile, 72 Ala. 262, 269 (1882)(constraction of contract is a matter for the court unless extrinsic evidence is considered); Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 629, 75 So. 284, 288 (1917); and Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co., 893 So.2d 395, 404 (Ala. Civ.App.2003) (courts attempt to resolve ambiguities before submitting case to a jury).”